# JOHN P. WEBER

## *v.*

# ANDREW ANDERSON.

1. LIMITATION—*twenty years, of land.* Under the statute, it is not essential that a party, who takes possession of land and holds adversely to the owner, should enter under a deed or muniment of title to cause the limitation of twenty years to run in his favor. It is sufficient for a party to take possession under a claim of ownership, and hold the time required by the statute.

2. It is the possession that bars the owner of a recovery. If the owner permits the occupation of his land for a period of twenty years, by a party asserting ownership, he will be barred by the statute from making an entry, or bringing an action to regain possession. No deed is required to the inception, the continuance or the completion of the bar.

3. SAME—*deed not necessary to transfer possession.* A deed is not necessary to transfer the possession of land held adversely to the owner, and where one person succeeds to the possession of another, and it becomes necessary to connect the possession of the two to make the period required to bar the owner, the transfer of possession may be shown by parol evidence.

4. PAROL EVIDENCE—*to connect possession of land.* Where land is held adversely by different occupants, the identity and continuity of their possession, in order to show a limitation, may be shown by parol evidence.

5. MEASURE OF DAMAGES—*covenant on failure of title.* In covenant upon a warranty deed, where the title has failed to the whole tract, the grantee, or his assignee, will be entitled to recover the original consideration paid for the land, and six per cent interest. Where the title fails to a part of the tract sold for a gross sum, the measure of damages for a breach of covenant will be the relative value of the land to which the title has failed, as compared to that which is valid, in proportion to the price paid for the whole. But in either case, where no eviction is had, and the paramount title is purchased for less than the price originally paid, the recovery will be limited to the amount paid, and six per cent interest.

APPEAL from the Superior Court of Cook county; the Hon. JOSEPH E. GARY, Judge, presiding.

Messrs. BRANDT & HOFFMANN, for the appellant.

Mr. GEORGE SAWIN, for the appellee.

Mr. JUSTICE CRAIG delivered the opinion of the Court:

This was an action of covenant, brought by Andrew Anderson, in the Superior Court of Cook county, against John P. Weber, for breach of covenant of seizin and good right to convey in a deed conveying certain land.

A trial of the cause was had before a jury, which resulted in a verdict for the plaintiff for $731. The defendant entered a motion for a new trial, which the court overruled, and rendered judgment upon the verdict, to reverse which the defendant brings the record here by appeal.

The grounds mainly relied upon by appellant to obtain a reversal of the judgment are, that the court erred in giving instructions one and two for appellee, and in modifying and refusing certain instructions of appellant.

In order to determine whether the law, as given by the court to the jury in the instructions was correct, a brief statement of the facts, as proven, seems to be necessary.

In 1846, a certain tract of land in Cook county, containing 40 acres, was conveyed by letters patent to one Daniel Elston. This tract was subsequently sub-divided into blocks and lots. One of the lots was known as "Tollgate lot," which is wedge-shaped, and lies in the forks of Milwaukee avenue and Elston road, as shown by a plat introduced in evidence. The east line of this lot is 141 feet long, the north line 155.9 feet, the other line, on Milwaukee avenue, is 210.6 feet in length. The 10 feet off the north line of this lot is the land to which it is claimed the title failed and the covenant of seizin was broken.

On the 19th of May, 1849, Daniel Elston conveyed by deed to Thos. Richmond, president of the Plank Road Company, a portion of the Tollgate lot, described in the deed as com-

mencing at the forks of the Milwaukee and Mile End road, and running north-west on the Milwaukee road 200 feet, then due east to the Mile End road, thence south to the place of beginning. By the description in this deed, the ten feet off the north side of the lot was not conveyed. Elston, in pointing out the boundaries of the land conveyed to the Plank Road Company, however, informed it that the deed embraced the whole of the Tollgate lot, and placed the Plank Road Company in possession of the entire lot.

The road company inclosed the entire lot with a fence, and used and held the possession of the entire lot, claiming title to the whole from the time of the purchase until the 1st day of September, 1863, when the Plank Road Company sold to appellant, and in the deed described the land as it was conveyed to it, but delivered the possession of the entire lot to appellant, who held the possession until the 26th day of May, 1870, when appellant conveyed the entire lot to appellee, and delivered the possession of the same to him.

In 1873, appellee obtained a quitclaim deed of the heirs of Daniel Elston, he having died in 1855, for the 10 feet off the north side of the Tollgate lot, and afterwards instituted this suit.

The first question presented by this record necessary to be considered, arises upon the second instruction given by the court for appellee, which is as follows:

"2. The jury are instructed that the defendant, Weber, can not claim the twenty years limitation, unless they find that the defendant derived the Turnpike Company title by some deed conveying the property in controversy, which the company acquired by possession, if any; and if they find, from the evidence, that the Turnpike Company never deeded to said defendant the land claimed as having failed in title, then the defendant is not the grantee of said Turnpike Company, for such land, and their possession can not enure to said defendant for that part of the land to which they had no title."

The Plank Road Company took actual possession of the land

in dispute in 1849, and held the continued possession of it until the 1st day of September, 1863, when it transferred the possession to appellant, and he remained in the undisputed possession until the 26th day of May, 1870, when he conveyed to appellee.

The Plank Road Company, as well as appellee, while in possession, claimed to own the land. The land was, therefore, held and occupied adversely to Daniel Elston, or his heirs. for a period of over twenty years, a length of time sufficient, under the Limitation Act of the State, to bar a recovery of the owner, if the possession of the Plank Road Company would enure to appellee without a formal conveyance by deed.

The jury were told, by the instruction, that the possession could not be transferred to appellee except by deed of conveyance.

By the sixth section of the act of 1827, it is declared, no person who now hath or hereafter may have any right of entry into any lands, tenements or hereditaments, shall make an entry therein, but within twenty years next after such right shall have accrued, and such person shall be barred from any entry afterwards.

By the seventh section of the same act, it is declared, every real, possessory, ancestral or mixed action or writ of right, brought for the recovery of any lands, tenements or hereditaments, shall be brought within twenty years next after the right or title thereto, or cause of such action, accrued, and not after. Gross' Statute of 1869, page 429.

Under this statute, it is not essential that a party, who takes possession and holds adversely, should enter under a deed or muniment of title to cause the statute to run in his favor. No deed or paper title is necessary. It is sufficient for a party to take possession under a claim of ownership, and hold the time required by the statute to complete the bar. *Turney* v. *Chamberlain*, 15 Ill. 273.

It is the possession that bars the owner of a recovery. If the owner permits the occupation of his land for a period of twenty years by a party asserting ownership, he is barred by

the statute from making an entry or bringing an action to regain possession.

No deed is requisite to the inception, the continuance or the completion of the bar.

Title to real estate is one thing, and possession another. The title may be owned by one, and the possession held by a different person. The title may be transferred without the possession, and the possession without the title. It does not necessarily follow, because a deed is required to transfer the title to real estate, that the same solemnity must be observed in a transfer of the possession, where the title and possession are not united in the same person.

The real question involved in this case is, was the land occupied continuously for a period of twenty years adversely to the owner? If it was, the owner was barred from a recovery. Whether there was a continuous possession held adversely to the owner, was a question of fact, to be established, to the satisfaction of the jury, as any other fact would be proven.

When it was shown that the Plank Road Company obtained the possession of the land in 1849, and held possession, claiming to own the same, until 1863, at which time appellant obtained possession, it became important to connect him with the first adverse possessor, in order to establish a continuous possession for the twenty years. This was done by parol proof, showing the Plank Road Company transferred their possession over to him. The manner in which the fact was established, in our judgment, was legitimate. We are aware that there are authorities that hold the fact should be proven by a deed, but the weight of authority and the reason of the rule is the other way.

In the case of *Cunningham* v. *Patton*, 6 Burr. 357, where land was held adversely by different occupants, but the evidence to establish the identity and continuity of their possession was by parol, the court held the proof competent to establish a continuous possession, and to complete the bar of the Statute of Limitations. The same doctrine is announced in *Scheetz* v. *Fitzwater*, 5 Burr. 131.

In the case of *Smith* v. *Chapin*, 31 Conn. 531, the Supreme Court of Connecticut, in deciding a question similar to the one in this case, says: "Doubtless, the possession must be connected and continuous, so that the possession of the true owner shall not constructively intervene between them; but such continuity and connection may be effected by any conveyance, agreement or understanding which has for its object a transfer of the rights of the possessor, or of his possession, and is accompanied by a transfer of possession in fact."

In *Menkins* v. *Blumenthall*, 27 Mo. 203, it was held, whether one occupant receives his possession from a prior one, or is a mere intruder upon an abandoned lot, is a question of fact, which may be determined by any testimony which is legitimate and pertinent. We know of no rule of evidence which confines the proof to a deed or written instruments.

In *Crispin* v. *Hannoven*, 50 Mo. 544, the doctrine announced in the last case cited is approved, and the court adds: "Not even a writing is necessary, if it appear that the holding is continuous and under the first entry."

In *McNeely* v. *Langan*, 22 Ohio St. 32, the same question arose, and it was there held: "The mode adopted for the transfer of the possession may give rise to questions between the parties to the transfer, but as respects the rights of third persons, against whom the possession is held adversely, it seems to us to be immaterial, if successive transfers of possession were. in fact, made, whether such transfers were effected by will, by deed, or by mere agreement, either written or verbal. See, also, *Murr* v. *Gillian*, 1 Caldwell, 511; *Overfield* v. *Christie*, 7 Ser. & Raw. 173; *Shannon* v. *Kinny*, 1 A. K. Marshall, 3.

From these views, it follows that the second instruction given for appellee was erroneous.

The next question presented by the record arises upon the first instruction given for appellee, as follows:

"1. The jury are instructed, that if they find the plaintiff entitled to recover, in this action, the measure of damages is,

the value of the title said plaintiff had to purchase, in order to protect himself in the enjoyment and possession of the property which he had purchased from the defendant, and to prevent an actual eviction, and any costs and expenses he may have been compelled to lay out in so purchasing title and protecting his possession, with six per cent interest on the amount so paid out to protect his possession, from the time of such payment, to the present time."

This instruction was calculated to mislead the jury in assuming that appellee had to purchase a paramount title to prevent an eviction, which was a fact for the jury to find from the evidence; but, aside from this, the rule in regard to the measure of damages in an action of this character is not correctly stated.

Under this instruction, if the land for which the title had failed had, since it was purchased by appellee, doubled in value, appellee could recover the increased value of the land, regardless of the amount he originally paid for it. This is in conflict with the law as it has been declared in this and other States for years.

Had the title failed to the whole tract purchased, appellee would have been entitled to recover the consideration paid for the land and six per cent interest. Where, however, the title fails to a part of a tract of land which has been sold for a gross sum, the measure of damages for a breach of covenant would be the relative value of the land to which the title has failed, as compared with that to which it is valid, in proportion to the price paid for the whole. In either event, however, when there has been no eviction, but a paramount title has been purchased in, and less was paid for the same than the consideration originally paid, the recovery would be limited to the amount paid and interest. *Major* v. *Dunnavant*, 25 Ill. 262; *Brady* v. *Spurck*, 27 id. 479; *Willets* v. *Burgess*, 34 id. 500; Sedgwick on the Measure of Damages, 196; Rawle on Covenants for Title, 237.

We are of opinion that the instruction should have been

refused, and appellant's second instruction, which the court refused, should have been given, as it lays down the rule of damages correctly.

For the errors indicated, the judgment will be reversed and the cause remanded.

*Judgment reversed.*