ABNER FOSTER

*v.*

HENRY LETZ.

1. LIMITATION — *color of title.* A deed purporting to convey the title to land is color of title under the 9th section of the Limitation Act of 1839.

2. SAME — *taxes may be paid by agent.* Taxes on vacant and unoccupied land may be paid by the agent of the person holding color of title under the Limitation Act of 1839.

3. SAME — *occupation by squatter.* The possession of land by a squatter having no claim or color of title will be confined to the part actually inclosed by him, as against one setting up a bar under the Limitation Act of 1839 by the payment of taxes for seven successive years.

4. COSTS — *apportionment in ejectment.* Under the statute relating to costs, where the plaintiff in ejectment recovers only a part of the lands sued for, the court is authorized to apportion the costs between the parties.

APPEAL from the Circuit Court of Will County; the Hon. JOSIAH McROBERTS, Judge, presiding.

This was an action of ejectment brought by Abner Foster against Henry Letz, for the south-east quarter section 6, and west one-half south-west quarter section 5, township 33 north, range 15 east of the third principal meridian, the declaration also counting on the undivided half, the undivided one-fifth, the undivided four-fifths, and undivided half of undivided half of the undivided four-fifths of the same tracts.

The defendant pleaded the general issue, and a trial was had by the court, resulting in a judgment for the plaintiff for the undivided tenth of the south half of the south-east quarter of the south-east quarter of section 6, and an order apportioning the costs, one-tenth to the defendant and the balance to the plaintiff.

On the trial the plaintiff showed title from the United States to one Erastus Case through various conveyances, and then introduced in evidence a deed from Erastus Case and wife to John Birge, dated August 31, 1841, for the lands first above described, which said deed was in the usual form of a warranty deed, with the following addition at the conclusion : " Said lands to be held by said Birge in trust for the use of himself and Ransom Mallory, Sheldon Lewis, Thomas F. Fuller, and Ambrose Peck, all of said Bristol, as copartners in business under the firm of Birge, Mallory & Co., and to be sold by him for their joint benefit, said lands being subject to certain contracts for the conveyance of the same to various individuals, which contracts are this day assigned by me to said John Birge, and against which said covenants of warranty are not to operate, and said grantee, by the acceptance of this deed, acknowledges the possession of said lands, and receives them subject to any tax heretofore levied and unpaid."

The plaintiff next read in evidence the record of a power of attorney from John Birge to Nathan C. Geer, dated June 1, 1848, in the common form, authorizing the sale and conveyance of the lands ; also a deed from John Birge, by Nathan C. Geer, attorney in fact, to John Sims, dated No-

vember 6, 1848, for the same lands ; also a deed from John Sims and wife to James Nason, dated February 5, 1859, for the undivided half of the lands, and a deed from James Nason to the plaintiff, dated October 10, 1863, for the undivided half of the lands.

The plaintiff next read in evidence a deed from John Sims and wife to William Nason, dated January 25, 1858, for the undivided half of the lands, and then offered a deed from William Nason and wife to plaintiff, dated April 13, 1857, for the undivided half of the lands, which was excluded on objection.

The defendant offered in evidence the record of a deed by John Birge, by Nathan C. Geer, his attorney in fact, to Elijah Moore, dated October 12, 1848, and filed for record February 10, 1849, for two purposes only: first, to show that if Nathan C. Geer ever had any power to convey these lands, he had exercised it before the deed from him to Sims, and the power was thereby exhausted ; second, to show that if Geer under that power of attorney had power to convey these lands, there is an outstanding title in Moore, the said grantee. The plaintiff objected, because he and those under whom he claimed had no notice thereof whatever at the time when Sims purchased said lands and received his deed therefor, and for unexplained interlineations, and for insufficiency of the certificate of acknowledgment thereof ; but the court overruled the objection, and admitted the same in evidence.

The defendant then introduced in evidence the record of a deed by John Birge and wife, Ransom Mallory and wife, Sheldon Lewis and wife, and Ambrose Peck and wife to Luther Higby and Pomeroy Higby, for the same and other lands, with full covenants of warranty, dated December 2, 1851 ; also a devise from the duly proven will of Luther Higby, as follows : " I give, devise, and bequeath unto my four sons, Walter Higby, Edwin Higby, Rollin Higby, and Truman Higby, all my real estate, to be equally divided between them."

The defendant next read in evidence the record of a power of attorney from Edwin Higby and wife, Truman Higby and wife, and Rollin Higby and wife, to Walter Higby, empowering him to sell and convey all lands which either of the makers had in the State of Illinois, and a deed from Pomeroy Higby and Walter Higby for the heirs of Luther Higby, deceased, dated February 8, 1865, conveying the lands to defendant, and signed by Pomeroy Higby and his wife, and Walter Higby, under the foregoing power of attorney. The evidence as to the possession and payment of taxes appears, in substance, in the opinion.

Messrs. BARBER & MUNN, for the appellant.

Messrs. HILL & DIBELL, for the appellee.

Mr. JUSTICE BREESE delivered the opinion of the Court:

This was ejectment, in the Will circuit court, by Abner Foster, plaintiff, and against Henry Letz, defendant, to recover possession of certain lands described in the declaration. The parties went to trial on the general issue pleaded, a jury being waived, and there was a verdict and judgment for the plaintiff for two acres of the premises, being part and parcel of one of the tracts of land described in the declaration, and apportioned the costs, adjudging against the plaintiff nine-tenths thereof. To reverse this judgment the plaintiff appeals.

The plaintiff deraigned his title to the lands in controversy through one Erastus Case, the grantee of Thomas Dyer and Julius Wadsworth, who had purchased them from the government of the United States, November 20, 1838, and who conveyed to Case by deed, April 1, 1841. Conveyances by Case, and from his grantees to the plaintiff, were produced in evidence. The defense was set up under section 9 of the Limitation Act of 1839, and it is to this we have directed our attention, conceiving it wholly unimportant to determine the character of the conveyances

under which the plaintiff claimed title, or whether trusts were created and their nature, and if properly executed.

John Birge was the grantee in the deed of Erastus Case and wife, of the 'date of August 31, 1841. Birge, on December 2, 1851, conveyed by deed of that date the lands in question to Luther Higby and Pomeroy Higby, three of the *cestuis que use* named in the deed from Case to John Birge — namely, Ransom Mallory, Sheldon Lewis, and Ambrose Peck — joining therein. Higby's deed to defendants was executed February 8, 1865. That this deed and the title conveyed thereby was obtained in good faith is not disputed, and, under repeated rulings of this court, was color of title in the Higbys. It is not disputed that the taxes, under this title, were paid for the years 1855, 1857, 1858, 1859, 1860, 1861, and 1862, leaving as a subject of dispute the taxes of 1856, or one year in the series of seven years.

We have examined the testimony carefully, on this point, and we think it is clearly and satisfactorily established they were paid by Dalton, agent for the Higbys, under this title. Appellant claimed the taxes for that year were paid through Parks & Elwood, real estate agents, for John Sims, then holding a conveyance thereof. The receipt shown by him is marked " duplicate," and is dated, " Washington (the township in which the lands are situate), Dec. 1856," and, except the signature and the printed portions of it, is in the handwriting of Mr. Elwood, in black ink, and for $11.16. The charge against Sims on the books of Parks & Elwood, in regard to this transaction, is under date of April 11, 1857, and Mr. Parks testifies it was the practice or custom of the firm to enter on the books a payment when made, and of the day when it was made, and that they did not pay town collectors except upon special instructions.

The receipt produced by appellee for the taxes of that year bears date January 14, 1857, and is wholly in the handwriting of one Connor, the township collector, in blue ink, and the word " paid," on the collector's book of 1856, is found, in the same kind of ink, opposite these lands, and

in the handwriting of the collector. Dalton testifies he was present when Higby paid the taxes for that year, and that it was early in January, 1857, the collector then having the books in his possession, and there was no word "paid" against these lands on the collector's book at that time. It appears there was one year in which the Higbys found the taxes paid when they went to pay them, and paid them a second time. An unsuccessful effort was made by appellant to show that this was for the year 1856, but the proof strongly tends to show it was for 1853 or 1854, in which a double payment was made. Dalton, who testifies to this point very particularly, is quite certain it was the first time he went with Higby to pay taxes, and refreshes his memory by a deed he had with him from the Higbys, which was dated December 21, 1853. We think there can be no doubt that the Higbys paid the taxes on this land for 1856, which makes a payment of taxes of more than seven consecutive years.

The question remains, were the lands vacant and unoccupied during all this time?

Appellee took possession in the spring of 1864, up to which time the lands were vacant and unoccupied, except by a squatter, having and pretending no right or claim, who had made a small cabin, and a brush and rail fence around three sides of about five acres on the south part of the south-east of south-east of section 6, and south of the cabin, which was near the center of the forty acres; it was not a regular fence — sticks in the ground and sticks to keep cattle out. This squatter had no papers, and made no claim to the land, and paid $5 to Higby when Higby first came to claim the land, and $5 each succeeding year, whether as rent or for fire-wood does not clearly appear. At any rate, this possession by the squatter was without any right or claim to the land, and could only extend to the portion actually inclosed, which was five acres. This is the extent, as held by this court in *Winkler* v. *Meister*, 40 Ill. 349, and other cases.

27 — 86TH ILL.

We forbear discussing the question under what title were these taxes paid, as we conceive the evidence is perfectly satisfactory they were paid under the Higby title, which appellee now holds, and his defense is complete to all the land except the five acres in possession of the squatter at the time these payments were made.

The plaintiff claimed one undivided half of these lands by deed from James Nason, and another undivided half by deed from William Nason and wife, of the date of April 13, 1857. ·An objection was sustained to this deed as being in fact a mortgage only, and the note it was given to secure having been paid. On the objection being made by defendant to this deed, as conveying title, the plaintiff thereupon offered to make proof of the conveyance of this undivided half through that deed and subsequent conveyances to him, but he did not produce any such proof; and the court sustained the objection, and we think rightly. This leaves to plaintiff but an undivided half of the five acres above specified, which the court found to be two acres, and for that gave judgment for the plaintiff, and apportioned the costs, adjudging against the defendant one-tenth part of the costs, and against the plaintiff nine-tenths thereof. Under the statute, chapter 33, title " Costs," the court was fully authorized to apportion the costs, and we think they were properly apportioned. The judgment of the court below is affirmed.

*Judgment affirmed.*