NICHOLAS SCHNEIDER

*v.*

BOCHUS BOTSCH.

1. LIMITATION—*as affecting boundary of lot.* Twenty years' actual possession of a lot under a contract of purchase, or adversely, is a bar to an action of ejectment as to any part of the land within the inclosure, even though the fence may have been over the true boundary of the lot.

2. DEED—*when it relates back.* Where a party takes possession of real estate under a contract of purchase, and in pursuance of its terms, the deed of the vendor, when made, will relate back to the date of the contract.

APPEAL from the Superior Court of Cook county; the Hon. JOHN A. JAMESON, Judge, presiding.

Mr. JAMES ENNIS, for the appellant.

Messrs. STEELE & JONES, for the appellee.

Mr. JUSTICE SCHOLFIELD delivered the opinion of the Court:

This was ejectment, by appellee against appellant, for a certain part of a lot in the city of Chicago.

It will be necessary to consider but one of the questions discussed in the briefs before us, since its determination, in the view we take of the case, is conclusive against the right of appellee to recover.

Appellant defends as tenant to the heirs at law of one Frantz, deceased. We shall assume that appellee's title is sufficiently proved.

Appellee and the heirs at law of Frantz, deceased, are seized in fee simple of adjoining lots, that of appellee being numbered four and that of appellant's lessors numbered three. The controversy grows out of a dispute as to the location of the boundary line between these lots. Hugh Maher originally owned both lots. In 1846 he made a contract of sale of lot three to one Harrington, who is since deceased, and placed Harrington in possession of the lot. Harrington did not finish making payment for the lot and receive a deed therefor until several years after, but his possession, claiming to be owner under his contract with Maher, commenced in 1846, and was continued unbroken in him until his death, and after his death in his heirs at law, until it was transferred under a contract of sale to Frantz, and possession was in him and his heirs continuously until the bringing of this suit, in 1868,—a period of more than twenty-one years. Before Maher sold to Harrington, there was a fence on what was supposed to be the dividing line between lots three and four, which fence, although one or more times since renewed, has remained in the same place from the time Harrington was placed in possession until the bringing of the suit.

The evidence shows that lot three is north of lot four, and that Harrington was placed in possession of the ground north of the fence. There is no dispute as to the existence of this fence continuously for the time before stated, but counsel for appellee insist: 1st. That the evidence fails to show an inclosure or actual possession of the ground north of the fence; and, 2d. That the limitation, by reason of adverse occupancy, only commences to run from the date of Maher's deed to Harrington, which is less than twenty years before the commencement of the suit.

We have carefully examined the record, and are of opinion counsel labor under a misapprehension as to the facts.

Jacob Frantz testified that he had known the property since 1847, and before. The question was asked him, "Was it (*i. e.*

the lot 3) fenced in at the time,—1847?" To which he responded, "Yes, sir."

Maher testified, after speaking of his ownership of both lots, that he occupied what was south of the fence and sold to Harrington what was north of the fence, and then responded to interrogatories thus:

Q. Now, was there not a fence located between you and Harrington in 1846, Mr. Maher? A. I think there was.

Q. Is it not a fact? A. It is a fact. It is a fact, sir, and it was always there since I had anything to do with the property. * * *

Q. Do you know that Harrington fenced in his lot? A. I think he did.

Again. This question was asked this witness by counsel for appellant: " Who was in the occupancy of the premises north of this fence where you supposed the north boundary of lot four was, if anybody, prior to the commencement of this suit?" To which he answered, " Well, the Harrington family was in possession of it, and they sold it." Then he was asked, " When did they take possession?" And he answered, " I think in 1846 or 1847,—certainly somewhere between 1846 and 1847."

Mrs. Ellen Kelley, a daughter of Harrington, to whom Maher sold the lot, testified that her father moved on the lot in 1845 or 1846. Then, alluding to the fence between the lots, she said: " The fence was put right up between us." Then occurred the following questions and answers:

Q. Now, when was that fence erected, Mrs. Kelley? A. The first year we lived there. I don't remember whether it was 1845 or 1846 we went there to live, and just as quick as we occupied the place the fence was put up between us.

Q. Then the fence was put up in 1846 or 1847? A. Yes, not so late as that. We had a garden the first year we went there, I know.

It is evident the fact of inclosure was not contested on the trial below. The evidence shows, with reasonable certainty,

that the ground claimed by Harrington was inclosed and possession taken by him as early as 1846, the fence between lots three and four being the boundary of his inclosure on that side. Upon the other point, appellee's position is likewise untenable.

As early as *Turney* v. *Chamberlain*, 15 Ill. 271, it was said: "It is enough that a party takes possession of premises, claiming them to be his own, and that he holds the possession for the requisite length of time, with the continual assertion of ownership. If he does not make the entry under paper title, his possession is considered as adverse only to the portion actually occupied. In such case, he acquires no interest beyond the limits of his inclosure. But where a party enters under a conveyance of a single tract of land, his actual occupancy of a part, with a claim of title to the whole, will inure as an adverse possession of the entire tract," etc.

And in *Hubbard* v. *Stearns*, 86 Ill. 35, the doctrine was applied to a case in all its essential facts analogous to that before us. *Weber* v. *Anderson*, 73 Ill. 439, and *Bauer* v. *Gottmanhausen*, 65 id. 499, are also analogous.

If Harrington's entry upon the portion of the lot in dispute was authorized by his contract of purchase, then the subsequent conveyance to him, which related back to that contract and vested the legal title thereby bargained for, is a complete defense to appellee's claim; and, on the other hand, if his entry was not authorized by that contract, it could not have been under it, and so the possession was, from the outset, adverse to Maher and those claiming under him, and being open and notorious for twenty years and more, it is equally a complete defense to appellee's claim. See cases *supra*, and, also, Washb. on Real Estate, (3d ed.) vol. 3, p. 145, § 48, *et seq.*

It was sufficient to show that the adverse possession of Harrington was succeeded to by appellant's lessors. *Turney* v. *Chamberlain, Hubbard* v. *Stearns, Weber* v. *Anderson, supra.*

The judgment is reversed and the cause remanded.

*Judgment reversed.*