SETH WADHAMS

v.

ETHEL L. INNES ET AL.

1. COVENANTS—BREACH.—The office and use of covenants of title and seizin is to secure the party taking a deed from damages by reason of a failure of the title purporting to be conveyed by the deed. The fact that either or both of the parties knew at the time the covenant was made that the grantor had no title in a part of the land conveyed, does not affect the right to recover damages for its breach.

2. MEASURE OF DAMAGES.—Where the title fails to a part of a tract of land which has been sold for a gross sum, and the consideration paid for such part cannot be separately ascertained, the measure of damages is the relative value of the land to which the title has failed.

APPEAL from the Circuit Court of Cook county; the Hon. W. K. McALLISTER, Judge, presiding. Opinion filed December 8, 1879.

This was an action of covenant, brought by Seth Wadhams against Ethel L. Innes and Catherine Innes, to recover damages for an alleged breach of the covenant of seizin, in a deed from them to him. The deed in question bore date August 19, 1873, and purported to convey from said Ethel L. Innes to the plaintiff, in fee, the south one-third of section seventeen, township thirty-six north, range fourteen, east of the third principal meridian, in Cook county, Illinois. It appears by the recitals in the deed that said Catherine A. Innes joined in said deed for the purpose of releasing her dower and all other claims she might have in said land. The deed contained the usual covenant that at the time of the enseailing and delivery thereof the grantors were well seized of the premises thereby

conveyed, as of a good, true, sure, perfect, absolute and indefeasible estate of inheritance in law, in fee simple, and had a good right, full power, and lawful authority, to grant, bargain, sell and convey the same in manner and form aforesaid.   The breach assigned is, that, as to a strip of land two hundred feet wide across said tract, constituting the right-of-way of the Illinois Central Railroad Company, the defendants were not seized, etc., and had not power to convey the same, but, on the contrary, said railroad company was lawfully seized in fee simple thereof, and alone had power to convey it.   Said strip of land contains eight and seventy-two one-hundredths acres.

The evidence shows that prior to the execution of said deed, Ethel L. Innes and her two sisters, as the heirs-at-law of their father, Robert Innes, deceased, were the owners in fee of the entire section seventeen, except that portion thereof occupied by the right-of-way of said railroad company, subject to the dower of their mother, Catharine A. Innes.   Prior and up to July 1, 1854, said section seventeen was a part of the public land belonging to the United States, except that said railroad had, prior to that time, and while said land was public land, been located and constructed across said section, and that said railroad company claimed and had all such right, title and interest in and to the land occupied by its right-of-way as it could acquire under the acts of Congress and of the General Assembly of Illinois, in relation thereto.   On the day last mentioned the United States conveyed said section to one Joseph Robinson, by patent, from whom, by mesne conveyances, one Cook, on the 22nd day of June, 1861, had become seized thereof, but to no greater extent than was said Robinson. On the day last named, said Cook conveyed said section to said Robert Innes, the description thereof in the deed, however, containing the following exception, viz: "Except so much as is occupied by Illinois Central Railroad."   By a survey of said section it appears that the whole section contains six hundred and forty-six acres.

It was admitted that for fifteen years prior to the commencement of this suit, said railroad company had maintained a fence on each side of its track, and one hundred feet distant

therefrom, across the entire section. The land included within the fences is shown by the evidence to be of the same relative value as the other portions of the tract in controversy.

It appears that, on the 1st day of August, 1872, the owners of the entire section, desiring the improvement and sale of said land, entered into a written contract with Messrs. Young, Rowley & Smith, real estate brokers in Chicago, by which it was agreed that said brokers should have control of said land, improve it and negotiate sales at not less than $90 per acre. After this contract was made, said brokers sold the entire tract to the plaintiff for $125 per acre, or $80,000, they supposing the section to contain the usual amount of six hundred and forty acres. It appears that the plaintiff knew of the existence and location of the railroad before and at the time of the purchase, and one of the brokers, Smith, testifies that while the negotiations were in progress, he had a conversation with the plaintiff in which the witness spoke, in a general way, of the advantages of the property, of the railroad, of depots, and of sub-dividing the land. Nothing was said in that conversation about the number of acres belonging to the railroad.

Two trials have been had in the court below, both resulting in a verdict for the plaintiff, with an assessment of only nominal damages. The first verdict was set aside on motion of the plaintiff, and a new trial granted; but the court denied the plaintiff's motion for a new trial after the second verdict, and rendered judgment in his favor for one cent damages, and costs. From that judgment the plaintiff has prosecuted this appeal.

Mr. W. H. HOLDEN, for appellant; as to the measure of damages upon breach of covenants, cited Major v. Dunnavant, 25 Ill. 262; Weber v. Anderson, 73 Ill. 439; Wood v. Kingston Coal Co. 48 Ill. 356.

Knowledge by either party that the grantor had no title, does not affect the right of recovery: Beach v. Miller, 51 Ill. 206; Morgan v. Smith, 11 Ill. 194; Tone v. Wilson, 81 Ill. 529.

The right of way entitles the railroad to the exclusive possession: Troy & B. R. R. Co. v. Pother, 42 Vt. 365.

Wadhams v. Innes.

Instructions should be based on evidence: Coughlin v. The People, 18 Ill. 266; Hamilton v. Singer Mfg. Co. 54 Ill. 370; Piner v. Cover, 55 Ill. 391; T. W. & W. R. R. Co. v. Ingraham, 77 Ill. 314; Holcomb v. Davis, 56 Ill. 413; Rockford Ins. Co. v. Nelson, 65 Ill. 415; Seckel v. Scott, 66 Ill. 106.

An instruction that a substantial compliance with the covenant, was erroneous: Taylor v. Beck, 13 Ill. 376; Estep v. Fenton, 66 Ill. 467; Aurora Ins. Co. v. Eddy, 55 Ill. 213.

Instructions should not mislead: Trustees v. McCormick, 41 Ill. 323.

Inadequacy of the verdict is as much a ground for reversal as would be its excessiveness: Carr v. Miner, 42 Ill. 179; James v. Morey, 44 Ill. 352; McDonald v. Walter, 40 N. Y. 551; Richards v. Sanford, 2 E. D. Smith, 349; English v. Clerry, 3 Hill, 279; Fowler v. Word, Harp. 372; Bacot v. Keith, 2 Bay, 466; Robbins v. Hudson, R. R. R. Co. 7 Bosw. 1; Brewer v. Lyringham, 12 Pick. 547: Hood v. Ware, 34 Ga. 328; Taunton Mfg. Co. v. Smith, 9 Pick. 11; Bishop v. Mayer, 7 Ga. 200.

Mr. John W. Showalter, for appellees; as to the measure of damages, cited Leland v. Stone, 10 Mass. 459.

Bailey, P. J.  The only question we are called upon to determine in this case is, whether, under the evidence, the plaintiff is entitled to only nominal damages.  That the covenant of seizin was broken, is conclusively established by the verdict, finding the issues for the plaintiff.  It may be remarked, however, that such finding was not only in accordance with, but necessarily followed from, the evidence in the case.  By their deed, the defendants assumed to convey to the plaintiff the entire south one-third of the section, and they covenant that they are well seized of the premises so conveyed.  There can be no pretense that they had any title to the eight and seventy-two one-hundredths acres occupied by the right-of-way of the Illinois Central Railroad Company.  Under the act of Congress granting to the State of Illinois the right-of-way for said railroad through the public lands, and the act of the General Assembly of Illinois, incorporating the Illinois Central Railroad

Company, said company·became vested with said right-of-way, two hundred feet in width, and with the sole use and control thereof. 9 U. S. Stat. at Large, 466; Private Laws of Illinois, 1851, p. 61. In the conveyance to Robert Innes, through which the defendants obtained all the title they ever possessed, this strip of land was excepted. Robert Innes did not even hold the title subject to the right-of-way of the railroad company. He had no right, title or interest in it whatever. The covenant of seizin was, therefore, broken the instant the deed was executed.

The office and use of covenants of this character is to secure the party taking the deed from damages by reason of a failure of the title purporting to be conveyed by the deed. The fact that either or both parties know, at the time the covenant is made, that the grantor has no title in a part or in any of the land, does not affect the right to recover damages for its breach. In Beach v. Miller, 51 Ill. 211, the Supreme Court, in discussing this principle, uses the following language: " Where a person insists upon and obtains covenants for title, he has the right, when obtained, to rely upon them and enforce their performance or recover damages for their breach. The vendor is under no compulsion to make covenants when he sells land, but having done so, he must keep them or respond in damages for injury sustained by their breach. Nor is it a release or discharge of the covenant to say that both parties knew it was not true, or that it would not be performed when it was made. A person may warrant an article to be sound when both buyer and seller know that it is unsound; so the seller may warrant the quantity or quality of an article he sells when both parties know that it is not of the quality or does not contain the quantity warranted. In fact, the reason the purchaser insists upon covenants for title, or a warranty of quality or quantity, is because he either knows or fears that the title is not good, or that the article lacks in quantity or quality."

In actions for a breach of the covenant of seizin, where the title to the whole tract has failed, the measure of damages is the consideration paid for the land, and six per cent. interest. Where the title fails as to a part only, and the purchase money

Wadhams v. Innes.

paid for such part can be ascertained, such purchase money and interest is also the measure of damages. But where the title fails to a part of a tract which has been sold for a gross sum, and the consideration paid for such part cannot be separately ascertained, the measure of damages is the relative value of the land to which the title has failed, as compared with that which is valid, in proportion to the price paid for the whole. Weber v. Anderson, 73 Ill. 439.

The foregoing rule is not questioned by counsel for the appellees, but it is insisted that there is a sufficient basis in the evidence for the ascertainment by the jury of the portion of the purchase money of the entire tract, which was actually paid for the part to which the title has failed and that which was paid for the residue. It appears affirmatively from the evidence, that the contract of sale was made with the plaintiff by the several owners of the entire section through their agents, Messrs. Young, Rowley & Smith, and that the entire section was sold for $125 per acre, or $80,000, they supposing that there was just six hundred and forty acres in the tract. Such is the testimony of Young, the agent who personally negotiated the sale, and we find in the record no contradiction of the account he gives of the transaction. The evidence shows that the land included within the right-of-way of the railroad is of the same value per acre as the residue of the tract. Nothing was said between the parties during the negotiations, so far as the evidence shows, about reserving from the sale the land included in the right-of-way, or whether it was to be included in or excluded from such sale. The only fact in proof on which the assumption of the appellees can rest, is that the plaintiff, at the time of the purchase knew that the right-of-way of the railroad company ran across said land, and had thereby constructive notice, at least, that his grantors had no title thereto. One of the firm of brokers engaged in negotiating the sale, but who had no personal agency in the transaction, had a casual conversation with the plaintiff, in which he seems to have alluded to the advantages which would accrue to the property from the railroad. We are unable to perceive on what principle the jury could, from this proof, infer that the

entire consideration paid for the land was, in fact, paid for that portion of the tract to which the grantors had a title, and that nothing was paid for the residue. If such conclusion is legitimate in this case, then in every case of a breach of the covenant of seizin, where it appears that the grantee had notice of a failure of the title to a portion of the tract before taking his deed, the jury would be justified in inferring that the whole consideration paid was for the part to which the title was good, and that nothing was paid for that to which the title failed. Such a conclusion would virtually defeat the whole purpose of the covenant, and would, in effect, establish the principle that a purchaser taking title with notice of a defect as to part of the land conveyed, is thereby debarred from seeking any remedy upon his covenant for title. We think that the evidence upon which the appellees rely to support the verdict in this case, taken alone, has no tendency to show that no consideration was paid for the land covered by the railroad, and that the jury, in assessing only nominal damages, found against all the evidence in the case bearing on the question of damages.

We are referred, in support of the verdict, to Leland v. Stone, 10 Mass. 459. That case is essentially different from this in many of its circumstances, and for that reason, cannot aid the appellees. We think the motion for a new trial should have been sustained; and for the error in overruling it, the judgment must be reversed and the cause remanded.

Judgment reversed.

McALLISTER, J., took no part in this decision.