## LEWIS et al. v. BARNHARDT et al.

(Circuit Court, N. D. Illinois, S. D.   October 21, 1890.)

1. WILLS—DEVISE—ESTATE TAIL.
      Under Rev. St. Ill. c. 30, § 6, which provides that the grantee of an estate tail shall take an estate for life, and that "the remainder shall pass in fee-simple to the person to whom the estate tail would, on the death of the first grantee in tail, first pass, according to the course of the common law," land devised to the testator's wife and the heirs of her body will, on her death without issue, pass to the heirs of the testator.

2. RECORDS—CONSTRUCTIVE NOTICE.
      A book in the county clerk's office, showing the names of purchasers of government land in the county, being kept only for purposes of taxation, is not constructive notice to subsequent purchasers. Following Betser v. Rankin, 77 Ill. 289.

3. VENDOR AND VENDEE—BONA FIDE PURCHASER—NOTICE.
      After a purchaser of land has taken possession under his contract and made valuable improvements, the recording of a copy of a will affecting his vendor's title is not constructive notice to him, though made before the delivery of his deed, since his title relates back to the execution of his contract.

4. ADVERSE POSSESSION—TAX-TITLE.
      Under Rev. St. Ill. c. 83, § 6, which makes seven years' possession and payment of taxes under color of title constitute good title, one who purchases in good faith from the holder of a tax-title, without notice that his vendor owned an estate for life in the land at the time of the tax-sale, can, by seven years' possession, and payment of taxes even during the life of his vendor, obtain good title as against the reversioner.

5. SAME—COLOR OF TITLE.
      Where a tax-deed is relied upon only as color of title in support of the statute of limitations, evidence that the deed was not founded upon a proper judgment is immaterial.

At Law.

Ejectment by Romeo Lewis and others, heirs of Romeo Lewis, deceased, against Abraham Barnhardt and Josephus Gish.   Rev. St. Ill. c. 30, § 6, provides that, "in cases where by the common law any person or persons might hereafter become seised in fee-tail of any lands, * * * such person or persons * * * shall become seised thereof for his or her natural life only, and the remainder shall pass, in fee-simple absolute, to the person or persons to whom the estate tail would, on the death of the first grantee, devisee, or donee in tail, first pass, according to the course of the common law."

*Thomas Millikin, Palmer W. Smith,* and *Puterbaugh & Puterbaugh,* for plaintiffs.

*Williams & Capen, W. T. Gibson,* and *W. G. Randall,* for defendants.

BLODGETT, J.   This is an action of ejectment for the recovery of a tract of about 320 acres of land in Woodford county, in this state.

The facts material to the questions involved in the case are all admitted by a written stipulation on file, and are briefly these:

"That in 1838, Romeo Lewis, then of Oxford, Butler county, Ohio, entered at the United States land-office in Springfield, in this state, the lands in question, together with other lands, making altogether about sixteen hundred acres.   That said Romeo Lewis died testate at his residence in Oxford, Ohio, on the 24th day of June, 1843.   That he left no issue surviving him, but left a widow, Jane N. Lewis.   That on the 8th day of January, 1842, said Romeo Lewis executed his last will and testament, which was duly probated in the proper court in Butler county, Ohio, on the 13th day of July, 1843, and un-

der which his widow, Jane N. Lewis, was duly appointed executrix, and she qualified and entered upon her duties as such executrix, and finally settled said estate in April, 1871. That by his said will Romeo Lewis, after making certain specific bequests to relatives, and making provision for the support of his then aged mother, made his wife his residuary legatee, the paragraph being in the following words: 'I further give and devise to my dearly beloved wife, Jane N. Lewis, *and to the heirs of her body*, my houses and lands in the town of Oxford, Butler county, Ohio, and all the residue of my lands in the states of Indiana and Illinois, and all the rest, residue, and remainder of my personal estate, goods, and chattels, of any kind and description whatsoever, to be equally divided between them, share and share alike.' It is further admitted that on the 2d day of September, 1843, Mrs. Lewis, in the court where said will was probated, elected to take under the will, which election was duly entered of record. That she had no living children at the date of the will, but that one was born to her after the date of the will, and that such child died before the death of her husband. That no child was ever after born to her, and that she died at the age of eighty years, without issue, in July, 1888, at Oxford, which had been her home from the death of her husband. It is further admitted that the plaintiffs in this case are heirs at law of said Romeo Lewis, being direct descendants of his brothers and sisters. It is further admitted that the lands in question were assessed for taxes in 1845 in the name of Romeo Lewis, and sold for non-payment of such taxes in October, 1846. That the certificates of purchase at said sale were assigned to Mrs. Lewis, and that on the 16th day of May, 1849, the sheriff of Woodford county executed and delivered to her a deed for said lands in pursuance of said tax-sale, which deed was duly recorded in said Woodford county on the day of its date. It is further admitted that the said Jane N. Lewis, on the 7th day of May, 1856, gave to one Harry Lewis a letter of attorney, authorizing him to sell, and contract to sell, the lands in question; and that on the 21st of June, 1856, he made a contract in writing with one Absalom Dehority, by which he agreed to make, or cause to be made, a good and sufficient warranty deed to said Dehority of the lands involved in this suit, on payment of $5,600, according to the terms of certain promissory notes of said Dehority, of even date with said contract. That said Dehority at once entered upon the possession of said lands, claiming the same under said contract, and began improving the same, and within the next two years had fenced all of said land, built two houses thereon, and had a large part of it under cultivation, and continued to so reside upon it until his death in 1876. That on the 31st day of August, 1866, said Jane N. Lewis made to said Dehority a warranty deed of said lands, in order to carry out the contract of sale made by said Harry Lewis, and that the defendant Josephus Gish now holds said lands by mesne conveyances, making a complete chain of title, duly recorded, from the heirs of said Dehority, defendant Barnhardt being the tenant of said Gish, and that the defendant Josephus Gish, and those under whom he claims by mesne conveyances from said Jane N. Lewis, have been in full and uninterrupted possession of said lands from the time said Dehority took possession of the same, in 1856, and have paid all taxes levied and assessed thereon since that time. It is further admitted that neither the defendants, nor any of the persons from whom they claim title, except said Jane N. Lewis, had any knowledge whatever of the existence of said will, or of the probate thereof, at the time of the contract for the purchase of said lands; but it is also admitted that what purports to be a copy of said will was recorded in the recorder's office of Woodford county on the 15th of August, 1866."

Upon these admitted facts, there can be no doubt that Mrs. Jane N. Lewis, under her husband's will, would have taken at common law only an estate in fee-tail, which is defined to be "an estate which is confined

in its descent to the posterity of some individual, so as to cease upon failure of such posterity." Burt. Real Prop. p. 4. So the same author says, at page 210:

"Upon a devise to a person and his issue or children, the construction varies according to circumstances. If the party have issue or children at the time when the devise is made, they will take estates, it seems, for their lives, jointly with their parent; but if he had no issue at that time, he takes an estate tail."

But by the operation of the sixth section of chapter 30 of the Revised Statutes of Illinois, tit. "Conveyances," which was in force at the time the will in question was made and took effect, Mrs. Lewis took only an estate for her natural life; and at the death of Mrs. Lewis, in default of heirs of her body, the heirs at law of the testator, Romeo Lewis, took the estate in fee.

The question then arises, do the admitted facts in the case furnish a defense to the claim now asserted by the heirs of Romeo Lewis, the plaintiffs? It being conceded that Mrs. Jane N. Lewis obtained a tax-deed from the sheriff of Woodford county on the 16th day of May, 1849, which was duly recorded in Woodford county on that day; that Dehority, under whom defendants claim, entered in 1856 into the actual possession of the lands under a contract of purchase from Harry Lewis, agent and attorney of Jane N. Lewis, for a valuable consideration; and that said purchaser received, on the 31st day of August, 1866, a warranty deed from Jane N. Lewis, in order to carry out the contract of sale so made by said Harry Lewis; and that from the time he took possession under said contract, in 1856, the said purchaser, and those claiming under him by warranty deeds in fee-simple, duly recorded, have continued in actual possession of said premises up to the commencement of this suit, and have paid all taxes assessed against the same. The statute of Illinois (section 6, c. 83, Rev. St.) provides that—

"Every person in the actual possession of lands or tenements under claim and color of title made in good faith, and who shall for seven successive years continue in such possession, and shall also during that time pay all taxes legally assessed on such lands or tenements, shall be held and adjudged to be the legal owner of said lands or tenements to the extent, and according to the purport, of his or her paper title."

It is contended on behalf of the plaintiffs that Mrs. Lewis, as tenant for life, was bound to pay the taxes, and could not defeat the title of the entail tenants or reversioners by allowing a tax-title to accrue which should in any way change her title or her relation to the rights of those who were to take the estate after her; and that, as the heirs at law of the testator had no right of entry until the death of Jane N. Lewis in 1888, they are not affected by this tax-title, which she allowed to accrue in fraud of their rights, nor by her deed in fee to Dehority.

While it is contended on behalf of the defendants that, as Mrs. Lewis had a color of title of record at the time the persons under whom they claim purchased the lands for a valuable consideration from Mrs. Lewis, and that, such purchaser having taken actual and visible possession in pursuance of such purchase, which possession has been continued, with payment of taxes, under deeds purporting to convey the fee-simple title

to successive grantees down to the defendant Gish, he has acquired a title in fee under the laws of this state, which cannot now be disturbed by the plaintiffs.

It is urged in behalf of plaintiffs that a certain book, which it is admitted was kept in the office of the county clerk of Woodford county, showing the names of the purchasers from the United States of all lands so purchased in the county, was notice to those who dealt with Mrs. Lewis, or her agent, that Romeo Lewis was the purchaser of the lands in question, and thus put them on inquiry as to the nature of Mrs. Lewis' title; but the supreme court of this state has held that this book is not notice to any person. *Betser* v. *Rankin*, 77 Ill. 289; *Bourland* v. *County of Peoria*, 16 Ill. 538; *Anthony* v. *Wheeler*, 130 Ill. 128, 22 N. E. Rep. 494.

It is also urged that, as a copy of the will was recorded in the office of the recorder of Woodford county on the 15th of August, 1866, which was prior to the execution and delivery of the deed from Mrs. Lewis to Dehority, this was a notice of the character and extent of her title to all who dealt with her. But I think the fact that Dehority had entered under a contract from Mrs. Lewis' agent in 1856, and taken actual and visible possession, and made valuable improvements, long prior to the recording of this copy of the will in Woodford county, and that the deed to him on the 31st of August, 1866, was given "to carry out the contract" of 1856, gives him a title which relates back to the time of his contract and possession under it; and that a mere record of a copy of this will in Woodford county, more than 10 years after this purchase, for a valuable consideration, with actual possession and valuable improvements made, even if it could then operate as notice of the limited nature of Mrs. Lewis' estate in the lands, came too late to affect the title of a purchaser who had bought in good faith without notice. *Snapp* v. *Peirce*, 24 Ill. 156; *Schneider* v. *Botsch*, 90 Ill. 577; *Sutherland* v. *Goodnow*, 108 Ill. 528. I think, also, that the mere record of a copy of this will does not, of itself, identify or connect the testator, Romeo Lewis, with this land. The most it shows is that a man by the name of "Romeo Lewis" assumed to make a will in 1842, by which he bequeathed certain lands in Indiana and Illinois to his wife, Jane N. Lewis, and to the heirs of her body; but it does not seem to me to show enough to connect Mrs. Lewis with these particular lands, or to put a person dealing with her in regard to the lands in question on inquiry as to whether they were affected by this will or not, as there was nothing appearing of record in the county showing that the testator ever owned these lands, or that they came within the operation of this will. Then, too, the document that was put of record August 15, 1866, was not the will, but what "purported to be a copy of the will," with no proof of its execution, or that it had ever been admitted to probate anywhere, and did not, in my opinion, operate as notice to any one that Mrs. Lewis held only a life-estate in these lands under its provisions.

We have, then, this defendant Gish holding as purchaser in good faith under a conveyance in fee-simple, without notice of plaintiffs' rights,

which relates back to June, 1856, from a grantee who had color of title in fee-simple by this tax-deed. It is true that these plaintiffs or their ancestors had, as is insisted in their behalf, no right of entry upon these lands until the termination of Mrs. Lewis' life-estate; but it does not follow that because they had no right of entry, they, or those under whom the present plaintiffs claim, had no right to protect their possible estate in reversion. They could have enjoined Mrs. Lewis, or any one claiming under her, from committing waste; and if Mrs. Lewis neglected or refused to pay the taxes, and suffered the property to be sold for taxes, thereby endangering the title in fee, they might have filed a bill in equity, and had the property placed in the hands of a receiver, with power to redeem from such sale. Story, Eq. Jur. § 913 et. seq.; High, Rec. §§ 11, 672. With these rights to interfere for the protection of the property from the consequences of neglect of the life-tenant, it seems self-evident to me that when Mrs. Lewis, having become clothed with color of title in fee by this tax-deed of 1849, assumed to make a conveyance in fee to a person who had no notice that her real interest as against the heirs of her husband was only a life-estate, those heirs were bound to assert their possible interest in apt time; that whoever were the heirs at law in 1856 of Romeo Lewis, when Mrs. Lewis, by her agent, sold the lands in question in this suit in fee to Dehority, and put him in possession, thereby dealing with the property as if she were the owner in fee, it was the duty of those heirs to have interfered, and appealed to the proper court for redress. At the time of Mr. Lewis' death, when his will took effect, Mrs. Lewis had no heirs of her body, and his then heirs at law, under whom these plaintiffs claim, were the reversioners of the fee in expectancy, and in fact ever since the death of Mr. Lewis his heirs at law have at all times been the reversioners in expectancy; and I think it needs no argument to show that the neglect of these heirs to assert their possible interest in the land in time to rescue it from the operation of the limitation laws of Illinois is binding and effective upon the present plaintiffs.

Suppose Mrs. Lewis, after the death of her husband, in view of the fact that these lands were wholly unproductive, and so being only a burden upon her by reason of the annually accruing taxes, had abandoned them and paid no taxes, and this defendant had bought them in at a tax-sale in 1846, and, after obtaining a tax-deed, had entered upon the actual possession, and remained since that time in full possession up to the time of this suit, and had regularly paid all taxes, can there be any doubt that, under the statutes of Illinois, he would have obtained a valid title as against these plaintiffs? But yet it seems to me that the case supposed does not differ in principle from the one made by the facts, as the person to whom Mrs. Lewis conveyed her tax-title without notice stands in precisely the same plight as if he had been the buyer at the tax-sale.

On the trial, proofs were offered on the part of the plaintiffs tending to show that there was no record in Woodford county of any judgment for the taxes for which these lands were sold at the tax-sale of 1846. I

do not consider that this proof defeats or affects the defense, as the tax-deed was sufficient color of title to set the statute running. *McCagg* v. *Heacock*, 34 Ill. 476; *Foster* v. *Letz*, 86 Ill. 412; *Lake Shore & M. S. R. Co.* v. *Pittsburgh & F. W. Ry. Co.*, 71 Ill. 38.

For these reasons, I am of opinion that the defense under the statute of limitations is complete, and do not deem it necessary to pass upon the defense made upon other grounds. An order will be entered finding defendants not guilty.