PORTER E. DANIELS *et al.* Appellants, *vs.* MATTIE G. SMITH *et al.* Appellees.

*Opinion filed December 21, 1911.*

1. APPEALS AND ERRORS—*when appeal will lie from ejectment judgment as to one of lots involved.* Where an ejectment suit is for the possession of two separate and distinct lots and the questions of title are entirely independent of each other, an appeal will lie from a judgment against the plaintiffs as to one of the lots.

2. EJECTMENT—*vendee's performance of contract of purchase is a defense to ejectment.* In ejectment, where the plaintiff relies upon and proves a legal title, proof that the defendant has entered into possession under a contract of purchase and that he has performed his part of the contract presents a complete defense.

3. SAME—*proof of existence of contract is essential to defense based upon its performance.* Proof of the existence of the contract of purchase is essential to a defense based upon possession thereunder and performance of its terms, and proof which merely raises an inference of the existence of a contract, the terms of which are entirely unknown, is not sufficient to defeat a recovery by the plaintiff upon the strength of his proven legal title.

4. SAME—*when plaintiff is not required to show breach of contract of purchase.* In ejectment, where the plaintiff proves a clear legal title and the defendants offer proof which, at most, merely raises an inference that there was some sort of a contract under which possession was taken, the plaintiff is not required to prove that there was such a contract and then show its terms and a breach thereof. (*Rowland* v. *Fischer,* 30 Ill. 224, explained.)

5. SAME—*when proof of payment of taxes is not admissible.* In ejectment, where the plaintiff has proved legal title, proof that the person under whom the defendants claim paid the taxes on the land from a certain year until his death is not admissible, where there is no color of title, no claim under any limitation law, or any evidence of a contract under which he was to pay the taxes.

6. SAME—*adjudging all the costs against one party is not apportioning them.* The power of the court to apportion the costs where the plaintiff in ejectment recovers only a part of the land sued for does not justify adjudging all the costs against the plaintiff in such a case, as adjudging all the costs against one party is not apportioning them.

APPEAL from the Circuit Court of Wayne county; the Hon. J. R. CREIGHTON, Judge, presiding.

CREIGHTON & THOMAS, and KAGY & VANDERVORT, for appellants.

BOGGS, BOGGS & HEIDINGER, for appellees.

Mr. JUSTICE CARTWRIGHT delivered the opinion of the court:

The appellants brought suit in ejectment in the circuit court of Wayne county against the appellees for the possession of lots 6 and 10 in the village of Orchardville, claiming title in fee. Mattie G. Smith, one of the appellees, who was an adult, filed a plea of not guilty. Bertha Smith and Luca Smith, the other appellees, being minors, a guardian *ad litem* was appointed for them, and he filed an answer in a form adapted to a suit in equity, praying strict proof of the matters alleged, and this was treated as a plea of not guilty. A trial resulted in a verdict of guilty as to lot 10 and not guilty as to lot 6. The appellants filed their motion for a new trial as to lot 6, which was overruled and judgment was entered on the verdict and all costs of the suit were adjudged against the appellants. An appeal was taken to this court, and the errors assigned relate to lot 6 and the judgment for costs.

The lots being separate and distinct and the questions of title entirely independent of each other, an appeal would lie from the judgment against the plaintiffs as to one of the lots. (*Village of Lee* v. *Harris,* 206 Ill. 428.) An affidavit that George E. Daniels was the common source of title was filed and not controverted, and plaintiffs proved that he died intestate and they were his heirs-at-law. The defendants were the widow and heirs-at-law of Dr. R. Button Smith, and it was proved that about 1900 or 1901 Dr. Smith took possession of the two lots; that an office building was erected on lot 10 and occupied for an office by the doctor until his death; that when the doctor took possession of lot 6, which is in controversy, there was a small

house of three rooms on the lot; that two rooms were added to the building, and there was some work done on the porch and a partition was moved, and that he paid for the work of the carpenters. George E. Daniels lived in Iuka, in Marion county, and owned lots and property in Orchardville. Jord Harrison, his son-in-law, was his partner, and they had a general store in Orchardville under the name of George E. Daniels & Co., which Harrison managed, and he also acted as general agent for the real estate and collected rentals. There was a barn on lot 6 which was not finished when Smith took possession, and Harrison had the barn finished and paid for it. There was no evidence under what arrangement Dr. Smith entered upon the lots. George E. Daniels died on May 25, 1905; and Jord Harrison, his partner and agent, died soon afterward. Dr. Smith died in 1909. A carpenter who helped put up the office and did the work on the porch and partition at the house, testified that about 1900 or 1901 John L. Scott, who was a clerk in the store of George E. Daniels & Co. and also a notary public, wrote some kind of a paper with relation to lot 6 which the witness said was a bond for a deed, but he did not remember the conditions; that Dr. Smith was present when the paper was written but Daniels was not, and it was taken away. He did not know whether it was ever signed or not, and Scott, who wrote the paper, had been dead about eight years at the time of the trial. The witness said that Dr. Smith took possession after that paper was written.

This was the only evidence tending in any degree to prove that there was a contract of purchase under which Smith or his heirs would have been entitled to possession provided its conditions were performed. It was entirely lacking in any tendency to prove the essential elements of a contract of purchase as to the amount, time of payment or any other conditions and did not amount to proof that there ever was a contract. It is argued that circumstances

were proved sufficient to raise an inference that there was some sort of contract, and that the burden of proof was on the plaintiffs to show a violation of some condition of the supposed contract. It is true that where a vendor seeks to recover in ejectment on the ground that the vendee has not performed his part of the contract for the purchase of the land in controversy, the burden of proof is on the plaintiff to show the default. That was the case in *Rowland* v. *Fischer,* 30 Ill. 224, where the plaintiff, to sustain the issues on his part, offered in evidence a bond for a deed and proof that the defendant was in possession under the contract or bond. That was all the evidence, and it was not proved that the notes given for the purchase money were unpaid. That rule has not been applied except in a case of that kind, but it has always been held that where the plaintiff relies upon and proves a legal title, and the defendant has entered into possession under a contract of purchase and has performed his part of the contract, proof of such facts will be a complete defense to an action of ejectment. (*Stow* v. *Russell,* 36 Ill. 18; *Turpin* v. *Baltimore, Ohio and Chicago Railroad Co.* 105 id. 11; *Chicago and Eastern Illinois Railroad Co.* v. *Hay,* 119 id. 493; *Sands* v. *Kagey,* 150 id. 109; *Harrell* v. *Enterprise Savings Bank,* 183 id. 538; *Hutchinson* v. *Coonley,* 209 id. 437; *Waggoner* v. *Wabash Railroad .Co.* 185 id. 154.) While the defendants might successfully have defended by showing possession under a contract and the performance of its conditions, it is plain that they could not do so where the most they were able to do was to raise an inference that there might have been a contract,· the terms of which were entirely unknown. Dr. Smith kept a bank account at Xenia, and a number of checks drawn by him on that bank in 1901 and 1902 in favor of George E. Daniels & Co. were offered in evidence, but it was proved that it was his habit to draw checks on the Xenia bank which Daniels & Co. cashed for him. So far as appears the checks all represented transactions of

that kind. It is argued that some of them might have been drawn as payments on the lot, but there is no evidence tending to prove that fact, and if he paid for the lot it is very strange that he did not obtain a deed during the several years afterward when George E. Daniels was alive or make any attempt to get a deed during the three or four years after his death. There was no evidence that any check was given for store account, for rent or on the purchase of the property. There was an entire failure of the defendants to prove any legal title or lawful right of possession.

The court admitted evidence of the payment of taxes on the lot by Dr. Smith from 1900 until his death, and as there was no color of title and no claim under any limitation law, nor evidence of any contract under which he was to pay taxes, the evidence was incompetent.

The first instruction given at the request of the defendants is as follows: .

"The plaintiffs in this suit cannot recover unless the proof shows that they were entitled to have the possession of the lots delivered up to them at the beginning of this suit. The defendants are not necessarily required to show any title to the lots. The law requires the plaintiffs to show that they have the right to immediate possession of the lots, and if they have failed to so prove, your verdict should be that the defendants are not guilty."

The plaintiffs had shown legal title in themselves, and it was error for the court to instruct the jury that the defendants were not required to show any title, and to tell the jury that if the plaintiffs had failed to prove their right to immediate possession the verdict should be not guilty. By the fourth instruction the court advised the jury that a contract may be proved by proof of facts and circumstances from which a jury, as reasonable men, will infer or conclude that a contract was made, and if the jury be-

lieved, from all the facts and circumstances, that Dr. Smith occupied either of the lots under a contract of purchase on some terms or conditions and had made improvements thereon, plaintiffs could not recover unless they had shown, by a preponderance of the evidence, that Dr. Smith or the defendants were required, by the terms of the contract, to do something which he or they had failed to do and for that reason the plaintiffs were entitled to have and re-take the lots, and unless the plaintiffs had proved such a failure by a preponderance of the evidence the verdict should be not guilty. Other instructions were of the same character, and required the plaintiffs to prove the terms and conditions of a contract the existence of which they disputed, and then to prove a default in the performance of such terms and conditions. There was no evidence of any contract, and it was error to require the plaintiffs, after showing a clear legal title, to show that there was a contract giving the defendants a right to possession, and also to show what its terms and conditions were. The instructions for the defendants, as a series, were erroneous.

It has been held that upon a verdict in ejectment where the plaintiff recovers only part of the land sued for, the court may apportion the costs of the suit between the parties. (*Foster* v. *Letz*, 86 Ill. 412.) In this case the court adjudged all the costs against the plaintiffs, which was not an apportionment. A reversal of the judgment as to lot 6 will necessarily reverse the judgment as to costs, and the final judgment of the court as to them will depend upon the result of another trial.

The judgment as to lot 6 is reversed and the cause is remanded.

*Reversed and remanded.*