WALTER B. SCATES

*v.*

PRESTON R. KING.

*Filed at Mt. Vernon November 15, 1883.*

1. RES JUDICATA—*to whom the rule is applicable—as to persons not parties or privies—of a subsequent purchaser from a mortgagor, who is not a party to a suit to foreclose.* A subsequent purchaser from a mortgagor is in no way affected by a decree of foreclosure of the mortgage, to which he is not a party. By such a decree his rights are not changed, enlarged or diminished. As to him, the decree is simply a nullity. In case the prior mortgage was a valid and binding instrument, the subsequent purchaser acquires merely a right to redeem, which will be wholly unaffected

by the decree of foreclosure; and, not being a party to the decree, he will be at full liberty, in a different proceeding, to contest the validity of the mortgage, and assert rights adversely thereto.

2. Certain county officials executed an instrument in the form of a mortgage, which purported to convey certain lands owned by the county, to a trustee, as security for the payment of certain construction bonds about to be issued by a railroad company. Subsequently to that transaction, the county sold and conveyed a portion of the same lands to a third person. After this sale and conveyance the holders of a portion of the railroad bonds so attempted to be secured, exhibited their bill in chancery against the county to foreclose the mortgage, omitting, however, to make the subsequent purchaser from the county a party thereto. A decree of foreclosure was entered, and a sale and conveyance of the lands embraced in the mortgage were had. Thereupon the subsequent purchaser sought by bill in chancery to have the conveyance under the decree of foreclosure set aside as a cloud upon his title. While it was conceded that the decree of foreclosure settled conclusively, so far as the county was concerned, the fact of making the mortgage, the power of the county to make it, and the liability of the county to pay the debt thereby secured, yet, as to the subsequent purchaser from the county, who was not a party to the foreclosure proceeding, that decree established nothing whatever that could preclude him from questioning the power of the county to make the mortgage at all, and asserting his title adversely to any one claiming to hold under the foreclosure decree.

3. SAME—*of notice by possession under an unrecorded deed.* The rule that the subsequent purchaser is not bound by the decree of foreclosure to which he was not a party or privy, is not at all affected by reason of his failure to put his deed upon record before the commencement of that suit, when it appeared that he was in the actual and exclusive possession of the land during the time of its pendency, such possession being constructive notice of his rights to the same extent as if his deed had been placed upon record at the time of its execution.

4. MUNICIPAL CORPORATIONS—*powers of their officers—third persons dealing with them—how far chargeable with knowledge thereof.* All persons assuming to act as the official agents of a county or other municipal corporation must have the requisite power or authority for that purpose, otherwise the municipality will not be bound, and every one dealing with them must know, at his peril, the extent of their authority.

5. SAME—*counties—extent of their powers.* A county possesses no powers except such as are expressly, or by necessary implication, conferred upon it by law. A county has no power to give away or otherwise dispose of its funds or property for a purpose not authorized by law.

6. SAME—*power of Wayne county to mortgage its swamp and overflowed lands to secure bonds issued by the Mt. Vernon Railroad Company in 1859.* The charter of the Mt. Vernon Railroad Company, passed February

15, 1855, provided that any county through which that road might run, and every county through which any other railroad might run, with which the Mt. Vernon railroad might be joined, connected or intersected, were authorized to aid in the construction of the same, etc. In 1859 the Mt. Vernon Railroad Company issued certain construction bonds, to secure which the county of Wayne conveyed its swamp and overflowed lands, in trust. The Mt. Vernon railroad did not, and could not, under its charter, run through Wayne county, nor did any other railroad run through that county with which that road was joined, connected or intersected. So the condition upon which Wayne county might aid in the construction of the Mt. Vernon railroad did not exist, and the deed of trust executed for that purpose was made without the power or authority in the county to do so, and was therefore void.

APPEAL from the Circuit Court of Wayne county; the Hon. C. S. CONGER, Judge, presiding.

This is an appeal from a decree of the circuit court of Wayne county, rendered at its October term, 1881, in a proceeding in chancery wherein Preston R. King is complainant and Walter B. Scates is defendant, setting aside certain conveyances as a cloud upon the title of the complainant to three tracts of land, being a part of what is known as the "swamp and overflowed" lands of Wayne county.

The facts essential to a proper understanding of this case are as follows: On the 15th of February, 1855, the legislature passed a special act incorporating the Mt. Vernon Railroad Company, authorizing the company to build a railway, with double or single tracks, from Mt. Vernon, Illinois, to some point on the Illinois Central railroad, or its Chicago branch, or on both. On the same day the legislature passed another special act incorporating the Belleville and Fairfield Railroad Company, by which that company was authorized to build and maintain a railroad from Belleville, St. Clair county, by way of Nashville, in Washington county, and Mt. Vernon, in Jefferson county, to Fairfield, in Wayne county. There was also, at the time of the incorporation of these companies, a line of railway belonging to the Alton, Mt. Carmel and New Albany Railroad Company, which had

been previously located and partly graded, extending from Fairfield to the eastern boundary of Wayne county. While matters were in this condition, at an election held in Wayne county on the 5th of November, 1855, in pursuance of an order of the county court, for the purpose of ascertaining the wishes of the people upon the subject of appropriating the swamp lands to the building of a railway through the county, a majority of the qualified voters of the county voted in favor of the following proposition, namely: "For appropriating the swamp and overflowed lands of Wayne county as a bonus to any company for building a railroad through the county." On the 26th of September, 1857, the county conveyed its swamp lands to Thomas L. Cooper, and eleven others, in trust, to build a railway through the county, which the trustees undertook to complete in three years from the date of the conveyance. Nothing was ever done under this agreement, nor does it appear there has ever been any reconveyance of the lands to the county. On the 19th day of November, 1858, the county authorities entered into a contract with Vanduzer, Smith & Co., by which the latter agreed to build and complete "a first-class single track railroad, * * * from Mt. Vernon, Jefferson county, to the eastern boundary of Wayne county, * * * and equip and operate the same within * * * two years from the sealing and delivery of the" contract. It was also provided therein that if the contractors should fail to complete the contract on their part, then all work and superstructure made by them should revert to the county, together with the franchises and right of way. In consideration of this agreement on the part of the contractors, the county of Wayne agreed to pay them $500,000 in the swamp lands of the county, at the rate of five dollars per acre, to be paid as the work progressed, as specified in the agreement. This agreement was never performed by the contractors, or by any one acting on their behalf, or claiming through them. Subsequently, on the

12th day of September, 1859, the contractors, Vanduzer, Smith & Co., assigned all their interest in said contract to the Mt. Vernon Railroad Company, and in and by the deed of assignment expressly bargained, sold and transferred to said company "all claims to any and all lands, moneys, materials and personal property which might thereafter become due to them under said contract." Upon the assignment of the contract between Vanduzer, Smith & Co. and the county, to the Mt. Vernon Railroad Company, the members of that firm became, as a part of the arrangement, stockholders and corporators of the company. On the 20th day of April, 1859, the Mt. Vernon Railroad Company, being about to issue $800,000 of railroad construction bonds, with interest coupons attached, to mature in 1874, for the purpose of securing the same, and for the benefit of the holders of said bonds, executed to Isaac Seymour, cashier of the Bank of North America, New York, as trustee, a mortgage upon its contemplated railroad, its appurtenances, franchises, and all its property and effects, present and prospective. At the same time, and as a part of the same general scheme for raising the necessary funds and securing their application to the building of the road, two of the members of the county court of Wayne county, acting on behalf of the county, executed and delivered to the said Seymour a trust deed, conveying to him all the swamp and overflowed lands of said county, upon the following trusts:

"*First*—To secure and guarantee the construction, completing and finishing said road and branches in the manner and time and upon the conditions of the act of incorporation of said company, provided for the faithful application of all moneys or properties arising from the sale of lands, or obtained upon the faith of the same, for constructing, completing and equipping said railroad according to the terms of the act of incorporation.

"*Second*—That a portion, not exceeding one-fourth, of the lands in value to be held by the trustee free from incumbrance, for sale, from time to time, on requisition of the company, for payment of interest on loans in case of deficiency from other sources, and for other expenditures that may be required: *Provided*, no portion of said one-fourth shall be sold until the road shall have been actually finished.

"*Third*—For the purpose of raising funds for construction of the road the said railroad company may issue its bonds, countersigned by the trustee, in sums of $500 and $1000, with interest at seven per cent per annum, payable semiannually, and the principal payable in 1874, at such place as shall be designated,—the bonds to be secured by mortgage of the said lands as hereinbefore provided, which shall be a prior lien, and shall be referred to and recited in said bonds, it being understood and agreed that Wayne county will make and deliver to the trustee proper deeds and declarations of trust, and other assurances, as shall from time to time be necessary and proper for carrying into effect the objects of this indenture, and for securing the payment of such construction bonds."

Upon the same day, and as a part of the same transaction, the county officials executed to the said Seymour a mortgage on the same lands, for the purpose of further securing the said construction bonds, as contemplated in said trust deed. On the 7th of December, 1863, and the 8th day of February, 1864, respectively, the county of Wayne conveyed to appellee two of the tracts of land in controversy. Wayne county had previously, on the 25th day of August, 1859, conveyed the remaining tract to Benjamin Cowling, who, on the 3d day of January, 1863, conveyed the same to appellee. It further appears that appellee has been in the actual possession of said several tracts of land, and has paid all taxes thereon since he acquired title thereto, as above stated.

On the 7th of March, 1865, John W. Kennicott, and four others, claiming to be the owners of a number of the construction bonds above mentioned, filed a bill in the Circuit Court of the United States for the Southern District of Illinois, against the Mt. Vernon Railroad Company and Wayne county, setting up the facts above recited, and alleging that default had been made in the payment of the interest on said bonds; that Seymour, the trustee and mortgagee, had died, and asking the appointment of another trustee, and that a discovery be made as to what, if anything, had been done toward the execution of said several trusts, and also praying a foreclosure of the deed of trust and two mortgages, executed, respectively, by Wayne county and the Mt. Vernon Railroad Company. The railroad company having failed to answer the bill, a default was entered against it on the 1st of June, 1868, and afterwards, on the 18th of the same month, a formal decree was entered against it for the sum of $73,-688.49, directing it to pay the same within five days, and in default thereof the master was directed to sell the company's road, franchises, and all its rights, property and effects, of every kind whatsoever, as provided in the mortgage. In pursuance of this decree, on the 26th of August following, the company's road, franchises and effects were sold by the master to the highest bidder, and struck off to the defendant, the Mt. Vernon Railroad Company, at $600, and the master thereupon executed a deed to the company for the property thus sold. The cause was continued on the docket as to the county of Wayne until the 17th of January, 1870, when the complainants filed an amended bill, which was answered by the county on the merits. In the meantime various amendments had been made to the bill, by means of which other bondholders were brought in and made complainants to the bill. Upon the hearing the Circuit Court of the United States, on the 2d of January, 1871, entered a decree dismissing the complainants' bill, on the ground "the proofs (in the judg-

ment of that court) failed to show that at the date of the mortgage and deed of trust in question there was any line of railroad constructed, or authorized to be constructed, through Wayne county, with which the Mt. Vernon railroad was joined, connected or intersected." This decree, on appeal to the Supreme Court of the United States, was reversed at its December term, 1872, and the cause remanded to the circuit court, where a decree was entered by that court in conformity with the prayer of the bill, under which the swamp and overflowed lands of Wayne county were sold to certain trustees, who assigned the certificate of purchase as to the land in controversy to N. M. Broadwell, who, after receiving a master's deed therefor, conveyed the same to appellant, Walter B. Scates. Appellee was not made a party to the legal proceedings above mentioned.

Mr. WALTER B. SCATES, Mr. LYMAN TRUMBULL, Mr. W. C. GOUDY, and Mr. CHARLES B. LAWRENCE, for the appellant.

Mr. H. TOMPKINS, Mr. R. P. HANNA, Mr. C. C. BOGGS, and Messrs. GOLDEN & WILKIN, for the appellee.

Mr. JUSTICE MULKEY delivered the opinion of the Court:

It is claimed by counsel for appellant that the decree of foreclosure in the United States court finally settled, as *res judicata*, the fact of making the mortgage, the power and authority of the county to make it, and the liability of the county to pay the debt thereby secured; and that these facts being thus conclusively established, there remained to appellee, after such foreclosure, the single right to redeem from the sale under the decree, and that that right not having been exercised within the time allowed by the statute for that purpose, it is forever gone. We do not concur in this view to the extent stated. It is conceded, however, that so far as the county is concerned the above facts are conclu-

sively settled by the decree in that case, but as against appellee, who was not a party to the proceeding in which it was rendered, and who does not claim under it, but, on the contrary, adversely to it, we are unable to perceive on what principle it establishes anything as to him outside of the mere fact that such a decree was rendered. It is true any one claiming title under it might, in an action of ejectment against one claiming adversely to it, offer it in evidence as a link in his own chain of title. Subject to these limitations we do not understand the decree is of any binding force upon any one who was neither party nor privy to it, as is clearly the case with appellee. Nor is the rule in this respect at all affected by reason of appellee having failed to put one of his deeds upon record before the commencement of that suit, for, notwithstanding such is the fact, it clearly appears that long before, and at the time of the commencement and during the pendency of that suit, appellee was in the actual and exclusive possession of all the land in controversy, which was constructive notice of whatever rights he acquired under his deeds, to the same extent as if they had all been placed upon record at the time of their execution.

A number of authorities are cited in support of the familiar rule that where a mortgagee proceeds to foreclose without making the grantee of the mortgagor a party, as was done in this case, such foreclosure will be valid and binding, subject to the right of such grantee to redeem. We do not at all question this rule, but concede it to the fullest extent. We see nothing in it, however, that conflicts with the other general principle to which we have just adverted, that a decree or other legal proceeding is binding only upon the parties thereto, or their privies. By such a decree the grantee of the mortgagor is not affected at all. His rights are neither changed, enlarged nor diminished. By his conveyance he simply acquired the equity of redemption in the mortgaged lands, or such part of them as he purchased,—or, in other

words, he acquired merely a right to redeem from the mortgage, and this right is wholly unaffected by a decree of foreclosure to which he was not a party. Indeed, the decree, as to him, is simply a nullity. *Cutter* v. *Jones*, 52 Ill. 84.

Every case supporting the rule contended for, (which, as before stated, we do not at all question,) proceeds upon the hypothesis that the mortgage under which the foreclosure proceedings were had was a valid and legal mortgage, and if it be conceded that the mortgage executed by the county in this case is valid, we would have no hesitancy in holding,— if this was the only question in the case,—that appellee has, as is claimed by appellant, a mere right to redeem. But such is not the case. Appellee does not admit the validity of the mortgage, or that he is the purchaser of a mere equity of redemption, but, on the contrary, he insists that by his purchase he acquired the absolute fee simple title to the lands in dispute, and that the so-called mortgage and deed of trust were executed without any power or authority on the part of the county officials, and that they were and are, for that reason, absolutely null and void as against the county and all persons claiming under it, including the appellee; and his right to maintain the present proceeding is placed expressly upon this ground, and, assuming the bonds to have passed into the hands of innocent holders, it is scarcely necessary to add that it can not be maintained upon any other hypothesis, for if it be once admitted the county officials had the requisite power and authority to execute the mortgage and trust deed so as to bind the county, and the bonds secured by them were negotiated for value, then the question becomes one of mere conflicting titles between the parties to this suit, which this court is not permitted to determine under the pretext of removing a cloud from the title of appellee. *Phelps et al.* v. *Schrader et al.* U. S. Sup. Ct. Oct. T. 1879; *Whitney* v. *Stevens*, 77 Ill. 585; *Same case,* 97 id. 483.

It is hardly necessary to observe that all persons assuming to act as the official agents of a county or other municipal corporation must have the requisite power or authority for that purpose, otherwise the municipality will not be bound, and every one dealing with them must know, at his peril, the extent of their authority. It is also a familiar doctrine, of general recognition by the courts and text-writers, that counties are political divisions of a State for governmental purposes, only possessing a low order of corporate existence, and for this reason they are generally designated "*quasi* corporations," and are conceded to possess no powers except such as are expressly, or by necessary implication, conferred upon them by the legislative department of government. In conformity with this well recognized principle it was settled at an early period in our judicial history, and the rule has been steadily adhered to ever since, that a county has no power to give away or otherwise dispose of its funds or property for a purpose not authorized by law. *Colton* v. *Hanchett et al.* 13 Ill. 615; *Perry et al.* v. *Kinnear*, 42 id. 160.

In the light of these well recognized principles let us examine the question whether the county officials of Wayne county were authorized to execute the mortgage and deed of trust through which appellant claims, at the time, in the manner, and for the purpose they did. That such power is not to be found among their general powers,—if, indeed, they may be said to have any such powers,—is too palpable to admit of serious discussion. Indeed, nothing of the kind is claimed by appellant, but, as we understand it, the power in question is claimed to be derived from the act incorporating the Mt. Vernon Railroad Company, and a vote of a majority of the qualified electors of Wayne county, given and cast at a special election called and held by the proper authorities under that act, and if it can not be thus derived it must be conceded that it does not exist. The 7th section of that act authorizes the county of Jefferson to subscribe to the capital

stock of the company, to issue bonds of the county, and to provide for the payment of the same by sale or mortgage of the swamp and overflowed lands of the county, and to apply the bonds, or their proceeds, to the payment of the stock so subscribed, and to "make such other disposition of said swamp and overflowed lands, in aid of the construction and maintenance of said railroad, as they deem best for the public interest for said county." The 8th section then declares that before any such disposition shall be made of the swamp and overflowed lands the same shall be authorized by a majority vote of the qualified electors of the county, and it also provides: "The county court shall prepare a proposition or propositions of the mode or modes, one or more, containing a brief, clear, distinct idea of the plan or plans proposed by them for aiding in constructing of said road, which said proposition shall be printed at large as an election ticket, and the voters may express their will on said proposition by writing 'Yea,' and 'Nay,' on said ticket," etc. The 9th section then provides that "any county through which said road may run, and every county through which any other railroad may run, (with) which this road may be *joined, connected or intersected,* may and are hereby authorized and empowered to aid in the construction of the same, or of such other road with which it may so connect, and for this purpose the provisions of the 7th, 8th and 9th sections of this act shall extend to, include and be applicable to every such county and every such railroad."

Now, the simple, plain English of all this is, that upon an affirmative vote authorizing it, the county of Jefferson, or any county through which the Mt. Vernon railroad should run, is empowered to aid in the building of that road; and in addition to this, any other county having a railroad running through it, which intersects or connects with the Mt. Vernon railroad, is also authorized to aid in the construction of the latter road, or of the one so passing through such county,

as it may prefer. So with Wayne county. Assuming there
was a railroad running through that county, and inter-
secting or connecting with the Mt. Vernon railroad, as is
claimed there was, but which we find there was not, Wayne
county, in that case, would have been authorized to aid in
building either of said roads, upon an affirmative vote of the
people of the county empowering it to do so. Now, as the
Mt. Vernon Railroad Company had no line of road, either
actual or potential, running through·Wayne county, and had
no power or authority under its charter to build such a road,
it would seem clear the county officials were not warranted
in hypothecating or mortgaging the county's lands to secure
the bonds of that company, upon the mere expectation that
it would at some future day build and operate a railway,
wholly unauthorized by its charter. We say upon a mere
expectation, for as the company could not, under its char-
ter, legally bind itself to build such a road, the county
authorities had no right to rely on any inducements held out
by the representatives of the company in that direction,—
much less had they any right or power to dispose of the
county's lands in the manner we have seen. All the county
authorities could lawfully have done, under the circumstances
assumed, would have been, upon an affirmative vote of the
county to that effect, to have aided in the building of the
Mt. Vernon railroad. Assuming there was a road running
through Wayne county, and connecting or intersecting with
that company's road, they might have done that, but nothing
more, so far as the Mt. Vernon Railroad Company was con-
cerned. But it is not claimed, nor, indeed, could it be, with
even a shadow of consistency or truth, that the vote of the
county authorized the county board to aid in the construc-
tion of that company's road. The people of Wayne county
voted to appropriate these lands as a bonus to any company
for building a railroad through Wayne county, and not to
secure the construction bonds of the Mt. Vernon Railroad

Company, as was attempted to be done. No company has ever built the road contemplated by the vote of the people of Wayne county, or made even a substantial effort to do so, nor has any company authorized to build it ever entered into any valid contract or obligation to do so.

It further appears that at the time of the execution of these instruments, through which appellant claims, by Wilson and Scott, on behalf of the county, the former was a director in the Mt. Vernon Railroad Company, and Wilson himself swears the business was not transacted at any general or special term of the county court, and the law is well settled that the members of the county court can only bind the county when duly convened and acting as a board. Here we find two members of the court casually meeting together, and in the absence of the other member, and without any notice to him, executing a mortgage and deed of trust upon all the lands of the county to secure the so-called construction bonds, amounting to hundreds of thousands of dollars, of a railway company located in a foreign county, and in which one of the parties assuming to act for the county was a director. Such a transaction as this can not, in our judgment, be regarded as imposing any legal obligations or liability on the county, or those claiming through it. It further appears, from the testimony of Wilson, that while these bonds were still in the hands of the agents of the railroad company the whole scheme of building the road through Wayne county had been abandoned, and that subsequently, in December, 1862, the county court passed an order directing the commissioners to proceed to sell the swamp lands, just as though these transactions had never occurred. Under these circumstances any one subsequently purchasing the bonds, by the exercise of ordinary care and prudence would have seen these transactions were illegal in their inception; and moreover, whether illegal or not, that the whole matter had been abandoned, and that the consideration for the instruments in

question had failed. The truth is, the execution of the mortgage and deed of trust was unauthorized, and in palpable violation of law, and, as against appellee, all titles to the land in question derived through them must be regarded as void, and a cloud upon appellee's title.

Counsel for appellant have pressed upon our attention the decision of the Supreme Court of the United States in *Kennicott* v. *Wayne County*, 16 Wall. 452, based upon substantially the same state of facts appearing in the present record, wherein a different conclusion was announced from the one reached in this case. We readily perceive and concede the inconvenience and embarrassment that may arise from this diversity of holding, and would most cheerfully avoid it if it could be done without sacrificing our own convictions with respect to the rights of the parties, as founded upon an unbroken current of decisions of this court running through a period of many years,—but it can not. As is well known, there is, and for many years past has been, a manifest material diversity, in one respect, in the holdings of the Federal courts and the courts of this State as to the liability of counties and other municipalities on bonds issued by them in aid of railroads or other like enterprises, the former holding, if there is a valid law authorizing the issuing of such bonds upon certain specified conditions, and the corporate authorities, or legally constituted agents of the municipality, whose duty it is to determine whether these conditions have been performed or not, find as a fact the law has been complied with respecting such conditions, and issue the bonds containing recitals to that effect, the municipality will be liable on the bonds in the hands of innocent holders, whether the conditions have been really performed or not; while on the other hand, the courts of this State have uniformly held there must not only be a valid law authorizing the issuing of the bonds, but also a substantial compliance on the part of the municipal authorities with the requirements of the law,

otherwise the municipality will not be bound; that it is the performance of the conditions specified in the law which authorizes the corporate authorities to issue the bonds, and not the recitals which, from ignorance or corrupt motives, they may happen to make with reference to such performance; that such municipal agents are powerless to enlarge their own jurisdiction and authority by making a false record, as was done in this case, and by that means bind the municipality. In the light of this diversity of holding it is not difficult to perceive how the Supreme Court reached a different conclusion in the *Kennicott case* from that reached by us in this; yet even in that case, viewed in the light of the rule which obtains in the Federal courts, as above stated, the soundness of the conclusion therein reached is not at all free from doubt. In the first place it was contrary to the conclusion reached by the Circuit Court of the United States. In the second place it was concurred in by only six of the nine judges constituting that court; and lastly, two of the non-concurring judges dissented on the record from the conclusion reached by the majority. Under these circumstances it is certainly going a long ways to ask us to recognize that case as an authority in this. We could not do so without overruling all the previous decisions of this court relating to the question under consideration.

Perceiving no error in the decree below, it is therefore affirmed.

*Decree affirmed.*

Mr. JUSTICE DICKEY, dissenting:

I concede that a county has no power to give away or otherwise dispose of its funds or property for a purpose not authorized by law; but I think, by the clauses in the charter of the Mt. Vernon Railroad Company, and by the subsequent act validating the election held in Wayne county, and by the general current of contemporaneous statutes, the General

Assembly had recognized the purpose of applying swamp lands, and the proceeds of swamp lands, to the procurement for the counties of better railway facilities, as a proper and legitimate purpose. I think, too, that by the provisions of the charter of the Mt. Vernon Railroad Company the county had power to aid in the construction of that road by pledging its swamp lands for the payment of the construction bonds of that company. The reasoning of Mr. Justice HUNT, speaking for the Supreme Court of the United States, in *Kennicott* v. *Supervisors of Wayne County,* 16 Wall. 452, is satisfactory to my mind on that question, and I think it ought to control in this case. It is true, as suggested, that the Supreme Court of the United States holds recitals as to compliance with precedent conditions conclusive when *bona fide* purchasers have acted on the faith thereof, while this court holds such recitals may be contradicted, and all persons must, at their peril, inquire into the fact of the performance of a condition precedent. I do not see that this makes any difference in this case, as I do not find any proof in the record that the recitals alluded to are not in fact true. I am not aware that this court has ever decided that such recitals are not *prima facie* true, and govern until shown to be false by proof. While this court is not *bound* to follow that decision, respect for the opinions of that tribunal, as well as public policy, forbids a different decision, unless we are clearly convinced that such decision is erroneous. Our judicial system is so organized that the title to some of the lands embraced in this mortgage can be settled in the Federal courts, while the title to other of these lands must be decided in the State courts. It will be unfortunate if the law is to be held one way for one supposed owner of part of these lands, and another way for another having precisely the same title. It seems to me better to yield slight differences in opinion in order to have uniformity of decision in both courts.

There is another view of this case which to me is equally satisfactory. The General Assembly, by a variety of special laws, had authorized various counties, by one mode or another, to appropriate their swamp lands, respectively, to the purpose of securing to their people, respectively, railroad facilities. The county of Wayne had been authorized by the provisions of the Mt. Vernon charter, in certain contingencies and under certain limitations, to appropriate its swamp lands, or the proceeds thereof, to aid in the construction of either the Mt. Vernon road, or the Belleville and Fairfield road, or the Alton, Mt. Carmel and New Albany road. Efforts had been made in one or two ways to secure the object sought, but without success. A like experience had attended the efforts of other counties under special statutes. Contracts, in some cases, had been made. Wayne county had a contract with Vanduzer and his associates, but it had not been performed. In this state of affairs the General Assembly passed the general law of February 14, 1859, entitled "An act for the sale of swamp lands." This act, without withdrawing the legislative sanction which had already been given, in various acts, to the purpose of procuring additional railroad facilities, as a legitimate purpose to which to apply the swamp lands of various counties, and especially those of the county of Wayne, clothed the county court of every county with the unlimited power to sell its swamp lands at public or private sale, for cash or on credit, or for such securities as the county courts, respectively, might *think proper* to accept, the proceeds to be subject to the order of the county judges, respectively, for *such purposes* as the county courts, respectively, *might direct*. This language is very broad, and can not properly be held to confine the appropriation of the proceeds to ordinary county expenses. It clearly means something more. It must, I think, be held to embrace any and every purpose which by the General Assembly had been

recognized as one to which such lands might properly be applied. This, as we have seen, embraces aid to proposed railroads. Lest a narrower view might obtain, the act declares expressly that "this act shall apply to all counties having special laws in reference to the sale of swamp lands," and that nothing in the act should prevent any county court from carrying out any contracts then "existing for the disposal of" its "swamp lands."

This view, to my mind, fully sustains the power of the county court of Wayne county to make the mortgage and trust deed in question. These instruments were made by the county court of Wayne county. The record so shows. It is not competent by oral evidence to attack this record collaterally, by proving that only two of the members of the court acted,—that it was only a casual meeting, without notice to the other. It is a mistake to say that Wilson was at that time a director in the Mt. Vernon Railroad Company. The instruments were made in April, 1859, and the proofs show that he was not a director until in December thereafter. It will not do to say these mortgages were abandoned, and the lands sold as though they had not been made. The mortgages were recorded. The bonds were sold to *bona fide* holders, who had no notice of any abandonment. A failure of consideration does not avail under such circumstances.

I think the equities are with the appellant, and that the decree ought to be reversed and the bill dismissed.