GEORGE W. NORRIS

*v.*

CHARLES ILE.

*Filed at Mt. Vernon May 5, 1894.*

1. RES JUDICATA—*judgment, even though erroneous, cannot be attacked collaterally.* Where a court has jurisdiction of the subject matter and of the parties, the judgment or decree pronounced by it is conclusive and binding upon the parties and their privies, although the court may have proceeded irregularly or erred in its application of the law to the case.

2. LIS PENDENS—*basis of the doctrine—when notice begins.* The doctrine of *lis pendens* is founded upon public convenience and necessity, and the *lis pendens* begins from the service of the summons or subpœna, provided the bill filed is sufficient.

3. SAME—*what constitutes lis pendens and what it is notice of.* To create a valid *lis pendens* three facts are necessary: First, the property involved must be of a kind subject to the rule; second, the court must have jurisdiction both of the person and the property; and third, the property involved must be sufficiently described in the pleadings. When these concur, a purchaser *pendente lite* must take notice of everything averred in the pleadings pertinent to the issue or to the relief sought.

190:77 Fed 794

4. SAME—*when it dates from amendment, only.* Where an amendment to a bill sets up a new equity or brings forward a new claim or a different and distinct ground of relief not before asserted, the *lis pendens* will begin only with the filing of such amendment. But if all the material grounds of recovery were stated in the original bill, an amendment will not prevent the *lis pendens* from relating back to the original filing.

5. SAME—*what a sufficient description of property.* To create a *lis pendens* the property must be so pointed out in the proceedings as to warn the public that they intermeddle at their peril. But in *lis pendens* that is certain which can be made certain, and the description of the property is sufficient, if, by reference and upon inquiry, it may be ascertained.

6. SAME—*purchaser from mortgagor pendente lite.* A purchaser *pendente lite* from a mortgagor is, to all intents and purposes, a party to the decree of foreclosure. The same proceedings can be taken against him which can be taken against the mortgagor, and he is as conclusively bound by the result of the litigation as if he had been a party thereto from the outset.

7. SAME—*no notice need be taken of deed made pendente lite.* It is immaterial whether the complainant in a foreclosure suit has notice of a deed of the property made *pendente lite* or not. The litigating parties need take no notice of a title so acquired, and the purchaser, though known before decree, need not be made a party to the suit.

8. SAME—*estoppel by delay in prosecuting suit.* Where plaintiff has been so negligent in prosecuting the suit as to induce the belief that the prosecution has been abandoned, he will be estopped to insist upon *lis pendens.* Mere lapse of time, however, does not estop him, and if the cause finally goes to judgment or decree, it will be presumed, in the absence of any showing to the contrary, that there has been a binding *lis pendens.*

9. LIMITATIONS—*seven years' possession and payment of taxes.* It being the duty of a mortgagor, and also of his grantee *pendente lite,* to pay the taxes on the mortgaged premises, such payment by either of them cannot, while the relation subsists, be coupled with seven years' possession under the statute, to show adverse title by limitation.

10. SAME—*when statute begins in favor of mortgagor.* Neither a mortgagor nor his grantee *pendente lite* can assert an adverse possession against the complainant in a bill to foreclose the mortgage, until after the time for redemption from the foreclosure sale expires.

11. SAME—*when constructive possession not sufficient.* Where possession of land, alone, is relied upon for any purpose, in the absence of paper title, it should be a *pedis possessio,*—an actual occupancy of the premises in question,—and not a mere constructive possession.

APPEAL from the Circuit Court of Wayne county; the Hon. E. D. YOUNGBLOOD, Judge, presiding.

Mr. H. TOMPKINS, Mr. GEORGE M. NORRIS, Mr. R. D. ADAMS, and Mr. C. S. CONGER, for the appellant:

If any amendment is made, *lis pendens*, as to parties and matters involved in the amendment, dates from the time it is made. The amending of a bill to show a new equity creates a new *lis pendens*. Freeman on Judgments, sec. 199; *Durand* v. *Lord*, 115 Ill. 610; *Bradley* v. *Luce*, 99 id. 234.

There must be a continuous prosecution of the suit. *Phillips* v. *Railroad Co.* 94 Ill. 348; 2 Sugden on Vendors, 566; *Clarkson* v. *Morgan*, 1 T. B. Mon. 448; *Ray* v. *Roe*, 2 Blackf. 253.

*Lis pendens* is not even constructive notice of any other points than those which are in dispute between the parties to the action. Wade on Notice, sec. 561; *Stone* v. *Connelly*, 1 Metc. (Ky.) 652; *Dudly* v. *Price*, 10 B. Mon. 88; Freeman on Judgments, 202; *Bank* v. *Taylor*, 131 Ill. 376; *Walker* v. *Goldsmith*, 14 Ore. 125.

Messrs. CREIGHTON & KRAMER, Mr. R. P. HANNA, and Mr. E. BEECHER, for the appellee:

All who purchase property *pendente lite*, the title to which is involved in the litigation, take it subject to such a judgment or decree as may be finally rendered in the pending suit. 2 Black on Judgments, sec. 550; *Tilton* v. *Cofield*, 93 U. S. 163; *Murray* v. *Lylburn*, 2 Johns. Ch. 441; *Stone* v. *Connelly*, 1 Metc. (Ky.) 652; *Dickson* v. *Todd*, 43 Ill. 505; *Jackson* v. *Warren*, 32 id. 331.

Mr. JUSTICE MAGRUDER delivered the opinion of the court:

This is an action of ejectment, brought by appellant against appellee for the recovery of N. W. ¼ Sec. 24, Town 1, So. Range 9 East of 3d P. M., in Wayne County. The case was tried by agreement before the court without

a jury; the finding and judgment were for the defendant; and the present appeal is prosecuted from such judgment.

The land involved was originally a part of the swamp lands, granted to the State by Act of Congress, approved September 28, 1850, (2 Starr & Cur. Ann. Stat. p. 2379), and granted by the State to the several counties in which they were located by act of the legislature, approved January 22, 1852. (1 Adams & Durham's Real Est. Stat. & Dec. of Ill. p. 898). It is conceded, that the county of Wayne had good title to the swamp lands therein under said Acts; and both parties deraign their title from said county. Appellee claims title through a foreclosure sale in a proceeding to foreclose a mortgage executed by said county and conveying certain swamp lands, including the quarter section above mentioned. Appellant claims title through a deed of the same swamp lands, executed by said county after the execution of said mortgage, and after the filing of the bill to foreclose the same.

On April 20, 1859, the county of Wayne executed to Isaac Seymour, trustee, of New York, a mortgage upon 103,818 acres of its swamp lands (less 3800 acres preempted), to secure the payment of construction bonds of the Mount Vernon Railroad Company to the amount of $800,000.00, and at the same time also executed to said Seymour, as trustee, a trust deed conveying said lands to him upon certain trusts relating to the construction of said road and the raising of funds therefor, and containing recitals similar to those in the mortgage, and equally in the interests of the holders of said bonds. Said mortgage and trust deed were recorded in the recorder's office of Wayne County, on May 3, 1859. On the same day, the Mount Vernon Railroad Company executed a mortgage upon its contemplated railroad, its appurtenances, franchises, and all its property and effects, present and prospective, to the said Seymour, as trustee, for the purpose of securing said bonds and for the benefit

of the holders thereof. A fuller description of these instruments, and of the proceedings leading up to their execution, will be found in *Kenicott* v. *The Supervisors*, 16 Wallace, 452, and *Scales* v. *King*, 110 Ill. 456.

On March 7, 1865, John W. Kenicott and others, holders of some of said bonds, filed a bill in the Circuit Court of the United States for the Southern District of Illinois against the Mount Vernon Railroad Company and the County of Wayne to foreclose said mortgages and trust deed, alleging, among other things, the death of Seymour, the trustee, and that by reason thereof the trust had become incapable of execution except by the aid of the court, and praying for an accounting and for such other relief as might be just and equitable. On March 29, 1866, the complainants in said foreclosure suit filed an amended bill, setting up more specifically the facts in relation to the organization of said company, and praying that a trustee be appointed in the place of Seymour to execute the trust under the direction of the court, or for a decree foreclosing said mortgages or deed of trust. On October 1, 1866, complainants filed a second amended bill, setting forth said mortgages, and the provisions of the charter of said railroad company, and the action of the county court in calling and holding an election to take the vote of the people upon the question of aiding in the construction of a railroad by the appropriation of the swamp lands to that purpose, and in ordering the execution of said mortgages; and praying for a foreclosure of said mortgages and trust deed. Summons, issued upon the original bill, was served upon the County on March 11, 1865. The railroad company was also served, and default was entered against it on June 1, 1868, and a decree of sale entered against it on June 18, 1868, under which the company's road, franchises and effects were sold by the master to the company, and subsequently conveyed to it by a master's deed. (*Scates* v. *King, supra*).

On January 17, 1870, to which date the cause had been continued on the docket as to the county of Wayne, the said complainants filed a third amended bill, containing the same allegations and prayer as the former bill, and setting up, in addition to such allegations, that on November 19, 1858, the county of Wayne had made a written contract with Vanduzer, Smith & Co. for the construction of a railroad from Mount Vernon in Jefferson County to the eastern boundary of Wayne County, thus running across the entire width of the latter county; and that Vanduzer, Smith & Co. thereafter assigned their interest in said contract to the Mount Vernon Railroad Company. The contract thus assigned is more fully described in *Kenicott* v. *The Supervisors, supra,* and *Scates* v. *King, supra.* This bill was answered by the county upon its merits. A hearing was had on January 2, 1871, and a decree dismissing the bill was entered by said Circuit Court of the United States. This decree, upon appeal to the Supreme Court of the United States, was reversed and the cause was remanded to the Circuit Court, as will be seen by reference to *Kenicott* v. *The Supervisors, supra.* On June 25, 1874, a decree was entered by said Circuit Court foreclosing the mortgage and trust deed executed by the county of Wayne, and directing a sale of said lands by the master, and ordering that said county and all persons claiming under it as purchasers or grantees *pendente lite* "since the commencement of this suit" be forever barred and foreclosed from all equity of redemption in said mortgaged premises unless redeemed according to the laws of Illinois, and that the purchaser at the master's sale be let into possession, and that said county or railroad company, or purchaser *pendente lite* under either of them, who might be in possession, and any person coming into possession since the commencement of the suit, should surrender possession on the production of the master's deed.

The decree of foreclosure and sale thus entered by the Circuit Court was taken by appeal to the Supreme Court of the United States, and was there affirmed, as will be seen by reference to the case of *Supervisors* v. *Kennicott*, 94 U. S. Rep. 498.    Thereafter, on September 18, 1877, a sale was made by the master in chancery of the Circuit Court under said decree to the trustees of the complainants, and a certificate of purchase was issued to them, and by them assigned to N. M. Broadwell, to whom a master's deed of said lands was executed on May 5, 1879.    By a regular chain of conveyances, the title thus acquired by Broadwell, has passed to and become vested in the appellee herein, Charles Ile.

On October 13, 1868, the county clerk of Wayne County, in pursuance of an order entered on October 5, 1868, executed quit claim deeds to the Illinois South Eastern Railway Company, conveying all the lands involved in the Kennicott suit, and other lands, which deeds, by the terms of a contract between said county and said railway company, were held in escrow by one Alexander, as trustee, until the fulfillment of certain conditions, and were not delivered until July 1, 1870, (said conditions having been performed on April 14 and May 1, 1870), and were not recorded until June 15, 1872.    The Illinois Southeastern Railway Company was in December, 1869, consolidated with the Pana, Springfield and Northwestern Company, the name of the consolidated company being the Springfield and Illinois Southeastern Railway Company.    By deed dated July 29, 1871, and recorded June 15, 1872, the Illinois Southeastern Railway Company conveyed the lands in question to the Springfield and Illinois Southeastern Railway Company; and the latter company, by deed dated July 10, 1871, and recorded May 31, 1872, conveyed said lands to C. A. Beecher.    By regular conveyances, whatever title was thus acquired by C. A. Beecher has passed to and become vested in the appellant herein, George W. Norris.

As the Illinois Southeastern Railway Company did not obtain its deed from Wayne County until 1868, it was, of course, bound to take notice of the mortgage made by the County to Seymour, as trustee, which had been executed and recorded as early as 1859. The deed of 1868 was subject to the mortgage of 1859, and the holders of the bonds, secured by the mortgage, were entitled to priority, in the enforcement of their security, over the subsequent purchaser of the equity of redemption.

It is shown by the proof and is not denied by appellant, that the grantee in the deed of 1868 had actual, as well as constructive, notice of the mortgage of 1859. But it is claimed, that such notice cannot have the effect of postponing the rights of those claiming under the deed to the rights of those claiming under the mortgage because of the alleged void character of the mortgage. It is urged, that the county court had no power to execute the mortgage; that, consequently, nothing passed by it; and that the grantee in the deed of 1868, having notice of such want of power, was authorized to disregard the mortgage and accept a conveyance of the land as though no such mortgage existed. In support of this position reference is made to the case of *Scates* v. *King*, 110 Ill. 456. It was held in that case, that the trust deed and mortgage made by the county of Wayne in 1859 were void for want of power to execute them. There, the deeds to King were executed by the county before the bill to foreclose the mortgage to Seymour was filed, and King was not made a party to the foreclosure proceeding. Accordingly, his rights were not cut off by the foreclosure decree. Here, however, the railway company, under which appellant holds his title, obtained its deed after the bill to foreclose was filed and after the service of process therein; and the Company was, therefore, a purchaser *pendente lite*, and took its interest in the lands, subject to the foreclosure decree, as will hereafter appear.

We concur in the doctrine announced in *Scates* v. *King*, *supra*, as being in harmony with the decisions of this court, and would follow that case as a precedent rather than the case of *Kenicott* v. *The Supervisors, supra*, were it not that the decision in the latter case has conclusively settled the title to the property involved in the case at bar as between appellant and appellee. In *Kenicott* v. *The Supervisors, supra*, the Supreme Court of the United States held, that the county of Wayne had the power to execute the trust deed and mortgage to Seymour, and that the same were valid, and that Kenicott and the other holders of the bonds thereby secured were entitled to a decree foreclosing the same. The same conclusion was announced in the subsequent case of *Supervisors* v. *Kennicott*, 94 U. S. 498. The decision thus made by the Federal Court, whether right or wrong, is binding upon the parties to the foreclosure suit and those purchasing during its pendency. As to them, it is *res judicata*, and can not be attacked collaterally. The Circuit Court of the United States had jurisdiction over the subject matter and the parties in the foreclosure suit; and where it is made to appear that a court has such jurisdiction, the judgment or decree pronounced by it must be held to be conclusive and binding upon the parties thereto and their privies, although the court may have proceeded irregularly, or erred in its application of the law in the case before it. (*Maloney* v. *Dewey*, 127 Ill. 395). In *Scates* v. *King, supra*, we said : "It is claimed by counsel for appellant that the decree of foreclosure in the United States court finally settled as *res judicata* the fact of making the mortgage, the power and authority of the county to make it, and the liability of the county to pay the debt thereby secured. * * * It is conceded, however, that, so far as the county is concerned, the above facts are conclusively settled by the decree in that case."

But appellant contends that the grantee in the deed of 1868 was not a purchaser *pendente lite* in such sense,

that its rights can be controlled by the rules applicable to purchases made during the pendency of litigation.

Chancellor Kent has said, that *lis pendens* is no more than an adoption of the rule in a real action at common law, where, if the defendant aliens after the pendency of the writ, the judgment in the real action will overreach such alienation. (*Murray* v. *Ballou*, 1 Johns. Ch. 566). It was one of the ordinances of Lord Bacon, that "no decree bindeth any that come in *bona fide* by conveyance from the defendant before the bill exhibited, and is made no party either by bill or order; but where he comes in *pendente lite*, and while the suit is in full prosecution, and without any color or allowance or privity of the court, there the decree bindeth." (Idem.) Whether the object of *lis pendens* be constructive notice, or to hold the subject of the suit, or *res*, within the power of the court so as to enable the court to give effect to its judgment or decree, the decision of the court will be binding not only on the litigant parties, but also on those who derive title under them by alienations made pending the suit. (2 Pom. Eq. Jur. sec. 632). The doctrine of *lis pendens* is founded upon public convenience and necessity. (*Durand* v. *Lord*, 115 Ill. 610). The *lis pendens* begins from the service of the summons or subpœna after the filing of the bill. (*Grant* v. *Bennett*, 96 Ill. 513). A purchaser from the defendant while the suit is pending acquires his interest subject to such decree as may be rendered on the hearing. If this were not the rule, parties might, by transferring their interests during the pendency of the suit, defeat its whole purpose, and make the litigation endless. A purchaser *pendente lite* from a mortgagor is, to all intents and purposes, a party to the decree of foreclosure, because the same proceedings can be had against him, which can be taken against the mortgagor. He, who purchases property during the pendency of the suit, is as conclusively bound by the result of the litigation, as if he had been a party thereto from the outset.

(*Loomis* v. *Riley*, 24 Ill. 307; *Jackson* v. *Warren*, 32 id. 331; *Dickson* v. *Todd*, 43 id. 504; 1 Story's Eq. Jur. sec. 406; *Tilton* v. *Cofield*, 93 U. S. 163).

An application of these principles to the facts of the present case will show, that the Illinois Southeastern Railway Company, and those deraigning their title from that company, were as much bound by the decree of foreclosure in the Kenicott suit, as though they had been parties thereto. As the bill was filed on March 7, 1865, and summons was served upon Wayne County on March 11, 1865, the railway company, taking a deed from the county in October, 1868, was certainly a purchaser *pendente lite.* Is there anything in the pleadings, or amendments, or mode of prosecution in the foreclosure suit, which relieves the deed of 1868 from the operation of the general rules as to *lis pendens?*

It is claimed, that the original bill filed on March 7, 1865, was too indefinite in its allegations, and in the language of its prayer, to warrant a decree of foreclosure. In addition to what has already been stated in relation to the contents and prayer of said bill, it sets up the act of February 5, 1855, incorporating the Mount Vernon Railroad Company for building a railroad, etc., alleges the ownership of the swamp lands by Wayne County, and that the county was authorized by section 9 of said act to aid in the construction of said railroad under the provisions in sections 7, 8 and 9 of said act, that the county court of said county on September 28, 1855, ordered an election to be held on November 5, 1855, under said section 8, to decide whether said lands should be mortgaged to aid in such construction, that said election resulted in favor of appropriating the swamp lands for such purpose, that, in pursuance of such vote and of an order entered on April 20, 1859, said county executed two indentures on that day to Isaac Seymour, trustee, conveying said swamp lands in trust for the uses and purposes therein described, copies of which were filed as

exhibits "A" and "B" and made a part of the bill; the bill then gives a list of the lands conveyed, and further alleges that complainants were holders of some of the bonds secured by said indentures, that the interest on the same had not been paid by the county of Wayne or the railroad company, and that the said mortgages and trust deed had become forfeited by reason of such default, etc. The objections which counsel make to the bill, as we understand them, are, that, while the trust deed made by the county was filed as an exhibit, the mortgage executed by it was not filed as an exhibit, and that there was not a specific prayer for foreclosure.

We do not deem it necessary to discuss the sufficiency or insufficiency of the original bill, because, even if it was so defective in the respects indicated as not to be effective as a *lis pendens*, the amended bills filed on March 29, 1866, and October 1, 1866, were free from the defects complained of. These amended bills of 1866, particularly the second one, not only described more fully all the proceedings referred to in the original bill, but they set forth in detail and at large the provisions of the mortgage made by the county to Seymour on April 20, 1859, describing the lands thereby conveyed, and stating that said mortgage had been recorded in the recorder's office of Wayne County on a certain day, and in a certain book, and on certain pages of that book. The prayer contained all that was in the prayer of the original bill, and in addition thereto, prayed either for the appointment of a new trustee in the place of Seymour and that he be directed to execute the trust, or, in the alternative, as follows: "If it shall appear that your orators are entitled to a decree foreclosing said mortgages or deed of trust, and are entitled to relief by a direct order of the sale of said lands, or any part thereof, that said decree may be rendered, and for such other and further relief as to your honors may seem equitable and just."

Three facts are necessary to the existence of a valid *lis pendens*: first, the property involved must be of such a character as to be subject to the rule; second, the court must have jurisdiction both of the person and the *res*; third, the *res*, or property involved, must be sufficiently described in the pleadings. (Bennett on Lis Pendens, p. 153). We think that all these requirements are met in the amended bills of 1866. The legal maxim, that that is certain, which can be made certain, applies to the question whether property is sufficiently described to create *lis pendens*. The description of the property may be such that, by reference and upon inquiry, it may be ascertained. It must be so pointed out in the proceedings, as to warn the public that they intermeddle at their peril; and any one reading the bill must be able to learn thereby what property is intended to be made the subject of litigation. (*Miller* v. *Sherry*, 2 Wall. 237, *Green* v. *Slayter*, 4 Johns. Ch. 38; *Allen* v. *Poole*, 54 Miss. 323; 13 Am. & Eng. Enc. of Law, p. 877).

Where a bill, originally so defective in the description of the property involved, or in the language of its prayer, as not to create a *lis pendens*, is subsequently cured by amendment in these particulars, the *lis pendens* will commence at the time of filing the amendment, where the defendant has been served with process. (13 Am. & Eng. Enc. of Law, p. 886, and cases in note). In the case at bar the purchase *pendente lite* was made after the amendments of 1866, and after service of summons upon the county.

It is further contended on behalf of appellant, that *lis pendens* ended in June, 1868, when a decree of sale was entered upon the mortgage executed by the Mount Vernon Railroad Company. The bill was filed to foreclose three instruments, the mortgage made by the railroad company, the mortgage made by the County, and the trust deed made by the county. All these instruments were parts of one general scheme for the raising

of funds to build a railroad through the county, (*Scates* v. *King, supra*), but the mortgage executed by the railroad company was intended more particularly to cover the right of way, franchises, and rolling stock. If the court erred in rendering two decrees of foreclosure instead of one, it was an error, for which the foreclosure proceeding cannot be collaterally attacked. After the decree or order of 1868, the cause was regularly continued on the docket, until the final decree was entered under which the land was sold. It has been said that, in order to prevent a suspension of *lis pendens*, there must be a "full" or continuous prosecution of the suit. But the rule in reference to a continuous prosecution simply requires, that there shall be no such neglect in the prosecution, as cannot be explained and appears to be inexcusable. Mere lapse of time does not indicate such negligence. If the cause finally goes to decree or judgment, it will be presumed, in the absence of any showing that there has been a negligent intermission of the prosecution, that there has been a binding *lis pendens*, and that interveners *pendente lite* are bound by the decree or judgment. As a general rule, there will be no estoppel against the right to enforce the *lis pendens*, unless the plaintiff or complainant in the suit has been so negligent in its prosecution, as to induce the belief that such prosecution had been abandoned. (Bennett on Lis Pendens, pages 173, 180 ; 13 Am. & Eng. Enc. of Law, pages 889, 890, 891). In the present case, we find nothing in the record to show, that there was any such negligence in the prosecution of the foreclosure suit, as to overcome the presumption of a binding *lis pendens*.

It is still further insisted by the appellant, that, by reason of the amended bill filed on January 17, 1870, a new *lis pendens* was created from that time, which could not affect the interests acquired by the grantee in the previous deed of 1868. There are cases where the *lis pendens* will begin with the filing of the amendment, and will

not relate back to the commencement of the action, so as to affect intervening rights.    This, however, is only true, where the amendment sets up a new equity, or where the party making the amendment brings forward a new claim, or a different and distinct ground of relief, not before asserted.    (Bennett on Lis Pendens, pages 97, 160; *Tilton* v. *Cofield, supra; Bank* v. *Sherman,* 101 U. S. 403; *Stoddard* v. *Myers,* 8 Ohio, 203; *Gibbon* v. *Dougherty,* 10 Ohio St. 365; *S. C. Hall Lumber Co.* v. *Gustin,* 54 Mich. 624; 1 Freeman on Judg'ts, sec. 199; *Bradley* v. *Luce,* 99 Ill. 234; *Stone & Warren* v. *Connelly,* 1 Metc. (Ky.) 652; *Worthman* v. *Boyd,* 66 Tex. 401).    Purchasers *pendente lite* must take notice of everything averred in the pleadings, pertinent to the issue or to the relief sought.    (*Center* v. *Bank,* 22 Ala. 757; *Allen* v. *Poole, supra; Worthman* v. *Boyd, supra;* 13 Am. & Eng. Enc. of Law, p. 886).

The only new matter, to which counsel refer as being set up in the amended bill of 1870, is the contract between the county and Vanduzer, Smith & Co. to build a railroad through the county, etc.    (*Kenicott* v. *The Supervisors, supra; Scates* v. *King, supra.*)    No relief was asked under this contract.    No new cause of action was set up different from that stated in the bills of 1865 and 1866.    The contract was simply evidence of the power of the county to execute the mortgage and trust deed.    The bills already filed had alleged the execution of the mortgage by the county, in pursuance of an order of the county court, for the purpose of aiding in the construction of a railroad, and had asked for a foreclosure of the mortgage. Such also was the scope and character and prayer of the bill of 1870.    The mere pleading of a matter of evidence did not change the essential features of the case made by the bills already filed.    We do not think, that there was anything in the amendment of 1870, which prevents the *lis pendens* from relating back to the filing of the amended bills in 1866, and subjecting the interest acquired by the deed of 1868 to the operation of the foreclosure decree.

Counsel for appellant urge upon our attention various reasons why the complainants in the foreclosure suit were chargeable with notice of the execution of the deed of 1868, and of the rights of those holding under it. Where there is a purchase *pendente lite*, not only is the purchaser bound by the decree that may be made against the person from whom he derives title, but "the litigating parties are exempted from taking any notice of the title so acquired; and such purchaser need not be made a party to the suit." (1 Story's Eq. Jur. sec. 406). He is not a necessary party, because his vendor or grantor continues as the representative of his interests, and the plaintiff or complainant may ignore his purchase and proceed to final decree against the original parties. (*Edwards* v. *Norton*, 55 Tex. 405; *Smith* v. *Hodson*, 78 Me. 180; *Carter* v. *Mills*, 30 Mo. 437; *Steele* v. *Taylor*, 1 Minn. 274; 13 Am. & Eng. Enc. of Law, pages 900, 901). It is, therefore, immaterial whether the complainants in the foreclosure suit had notice of the deed of 1868 or not.

Counsel for appellant rely upon payment of taxes and possession for seven successive years under the deed of 1868 as color of title. This statute could not be invoked against the complainants in the foreclosure suit by the county of Wayne, or its grantee, during the pendency of the suit. While the relation of mortgagee and mortgagor continues, neither party in possession can interpose the statute of limitations as a defense against the other. The statute can only commence to run after that relation has been terminated in some of the modes known to the law. (*Rockwell* v. *Servant*, 63 Ill. 424). The mortgagor cannot defeat the mortgagee's right of action by retaining possession and paying taxes for seven successive years; and it is as much the duty of a grantee of the mortgagor, receiving his possession from the mortgagor, to pay the taxes upon the property as it is the duty of the mortgagor himself to do so. The limitation law of 1839 has no application to such a case. (*Hagan* v. *Par-*

*sons,* 67 Ill. 170; *Palmer* v. *Snell,* 111 id. 161). Nor does the statute of limitations run in favor of a purchaser *pendente lite.* Such a purchaser in possession of land so purchased will not be regarded as holding it adversely to the parties to the suit during the litigation. (*Lynch* v. *Andrews,* 25 W. Va. 751). In the present case the sale under the decree of foreclosure was not made until September 18, 1877, and the time of redemption did not expire until December 18, 1878. Not until the latter date was the purchaser under the foreclosure decree entitled to a master's deed, nor until that date could the mortgagor, or his grantee, assert an adverse possession. (*Emmons* v. *Moore,* 85 Ill. 304; 8 Bradw. Rep. 374). The proof does not show a payment of taxes for seven successive years after December 18, 1878, or after September 18, 1877, by the grantee in the deed of 1868, or by any of the parties holding under that deed. We cannot discover that appellant, or any of his grantors, have acquired title under the limitation law, which provides for possession and payment of taxes for seven successive years under color of title.

The considerations already presented dispose of the claim, that title was acquired under the first section of the limitation law in regard to possession for twenty years. Whatever possession the grantee in the deed of 1868, or those holding thereunder, may have had during the period of ten years from 1868 to 1878, whether such possession is claimed under the seven years' limitation or under the twenty years' limitation, was not adverse to the mortgagees prosecuting the foreclosure suit against the County, but was subordinate to their rights. After deducting the time, during which the foreclosure suit was pending, there was no adverse possession for twenty years by appellant, or any of his grantors, near or remote. The proof does not show any such possession as meets the requirement of the statute in regard to twenty years' possession. Where the possession of land alone

is relied upon for any legal purpose, in the absence of paper title, it should be a *pedis possessio*, an actual occupancy of the premises in question, and not a mere constructive possession. (*Webb* v. *Sturtevant*, 1 Scam. 181; *Ill. Mut. Fire Ins. Co.* v. *Marseilles Manf. Co.* 1 Gilm. 236; *Medley* v. *Elliott*, 62 Ill. 532; *City of Champaign* v. *McMurray*, 76 id. 353; *Schneider* v. *Botsch*, 90 id. 577). Under the first section of the limitation law, which provides that real actions for the recovery of land must be brought within twenty years, etc., no deed or paper title is necessary; it is sufficient to take possession under a claim of ownership. (*Weber* v. *Anderson*, 73 Ill. 439; *Shaw* v. *Schoonover*, 130 id. 448).

The judgment of the Circuit Court is affirmed.

*Judgment affirmed.**

---

*FAIRBANKS & CO. *v.* JAMES S. PALFREEMAN.

Per CURIAM: The record in this case presents the same identical questions, both of law and of fact, involved in the case of George W. Norris *v.* Charles Ile, in which an opinion affirming the judgment of the circuit court is now filed. For the reasons stated in the opinion in that case, the judgment in this will also be affirmed.

*Judgment affirmed.*